WARDLAW *vs.* MAYER, SON & COMPANY *et al.*

1. Although an attorney at law may have previously represented a
   certain firm in other business, yet where, upon the giving of a
   mortgage to such firm, he acted, by express agreement of the par-
   ties, as the attorney of both, in the preparation of that instrument
   and in reducing to writing the contract which had been agreed
   upon between them, he was not thereby disqualified from attesting
   the mortgage, and his attestation as a notary was valid and entitled
   the instrument to be recorded.    Nor did the fact that he was sub-
   sequently employed by the mortgagees to foreclose the mortgage

and collect the debt, relate back and affect the validity of his attestation.

2. Where a mortgage, after describing specifically the fixtures and furniture of a bar, described the stock generally as consisting of articles of a certain kind, without any specification as to quantity, quality or value, and all of the fixtures, furniture and stock were stated as then being in the mortgagor's bar-room, though, in fact, none of these things were in the bar-room, but they were either in the railroad depot or *en route* to that place, and in two or three days afterwards were placed in the bar-room, such a mistake in description could be corrected on a proceeding to distribute money arising from the sale of the fixtures, furniture and stock, as against a subsequent judgment creditor, it appearing that it was the agreement between the mortgagor and mortgagees that he should execute to them a mortgage, not only on his stock of goods in bulk, but upon other goods purchased from time to time to keep it up, as well as upon the fixtures and furniture.

(*a.*) The goods might be identified as those covered by the mortgage on a proceeding to distribute money, and the slight error could be corrected without a resort to a court of equity.

(*b.*) The description was sufficiently specific to cover a stock of goods in bulk, but changing in specifics.

(*c.*) Whether or not parties who made no exception and assigned no error in the decisions of the court below, but were brought to this courts as defendants in error, could, by motion here, change their position to plaintiffs in error, it is unnecessary to decide. It was sufficient that their counsel were heard in aid of exceptions taken by the plaintiff in error.

December 21, 1886.

Attorney and Client. Money Rule. Mortgages. Evidence. Equity. Contracts. Practice in Supreme Court. Before Judge BRANHAM. Floyd Superior Court. March Adjourned Term, 1886.

Reported in the decision.

C. A. THORNWELL; R. D. HARVEY & SON; HENRY WALker; J. W. H. UNDERWOOD, for plaintiffs in error, cited: Code, §§1955, 1957, 1959, 67 *Ga.* 97, 70 *Id.* 569; 61 *Id.* 290, 59 *Id.* 446, 469, 56 *Id.* 82; 50 *Id.* 435; 46 *Id.* 253; 57 Iowa, 665; 53 *Id.* 491; 8 Mich. 143; 38 Am. Dec. 368; 4 Metc. 306, 375; Jones Chat. Mort. 59, 55, 248; 59 Me.

564; Code, §408, 57 *Ga.* 678; 1 Jac. Fish. Dig. 124; 55 *Ga.* 543, 58 *Id.* 390; 74 Ind. 498; 30 *Id.* 10; 51 Ills. 198, 10 Ohio 261, Hilliard Chat. Mort. §§411, 412; 8 Md. 315; 10 Vt. 555, 59 Me. 564; 2 Mont. 440; 8 Mich. 143; 15 N. H. 529; 57 Miss. 89; 58 *Id.* 126; 50 Ills. 444, 61 *Id.* 308; 83 *Id.* 136; 20 Me. 413, 420; 37 *Ga.* 678; 46 *Id.* 253; 20 Iowa 231; 7 Penn. 228; 12 Johns. 540; 17 *Id.* 2.

WRIGHT, MEYERHARDT & WRIGHT, for defendants, cited: Code, §3118 *et seq.;* 13 *Ga.* 88; Jones Chat. Mort. §§53, 54, 59, 61, 65, 7 Cush. 456; Bigelow Eq. 73; Cent. L. J. (1886), 522, 428; 12 Metc. 333; 42 Iowa 471; 24 *Id.* 322; 18 Barb. 193; 57 Ills. 148; 26 *Id.* 415; Code, §1954; 60 *Ga.* 646; 55 *Id.* 543; 71 *Id.* 287, 387· 25 *Id.* 383; 58 *Id.* 178.

HALL, Justice.

The plaintiffs, who were merchants residing in Cincinnati, sold to the defendant, carrying on business in Rome, Georgia, liquors, cigars, etc., on credit, to stock his barroom, and at the time of the sale, it was agreed between them that he should execute and deliver to them a mortgage, not only on that stock of goods in bulk, but upon other goods purchased from time to time to keep it up, as well as upon bar-fixtures and furniture, and that Max Meyerhardt, Esq., a lawyer at Rome, should prepare and attend to the execution of the mortgage. Mr. Meyerhardt not only drew, but as a notary-public attested, the instrument, and thus attested, he caused it to be recorded on the proper book for the registry of conveyances in the county of Floyd, where the mortgagor resided. The plaintiffs paid the attorney for drawing and having the instrument executed. The various articles composing the fixtures and furniture of the bar were specifically described in the mortgage, but the stock was described generally as consisting of articles of a certain kind, without any specification as to quantity or quality or value; and all these fixtures,

furniture, stock, etc., were stated as then being in the mort-gagor's bar-room. When the mortgage was executed, none of these things were, in fact, in the bar-room, but were then either in the railroad depot at Rome or *en route* to that place, and in two or three days afterwards they were actually placed in the bar-room. After the stock and fixtures were placed in the bar-room on the 16th March, 1885, Marable, who had executed and delivered the above-mentioned mortgage to Mayer, Son & Co. (the plaintiffs), made and delivered another mortgage to J. M. Parish & Co. on a portion of the bar-fixtures, and on the 27th of March, 1885, W. H. Wardlaw obtained a common law judgment against Morrison & Marable (of which firm Marable, the above-named mortgagor, was a member). All the mortgaged property was sold under execution, and the amount realized from the sale—$1,282.23—was held up under notices from Marable's judgment creditors, and brought into court by the sheriff for distribution; where-upon, Mayer, Son & Co. moved a rule against him to pay over the same to them, and they at the same time insti-tuted a proceeding to reform their mortgage, so as to specify accurately the location of the goods, bar-fixtures, etc., when their mortgage, dated 12th January, 1885, was executed. Other creditors claiming a right to the fund intervened, and were made parties to the rule, and took issue with Mayer, Son & Co., who claimed the oldest lien as to their right to have the money paid to them. They alleged:

(1st.) That this mortgage was improperly admitted to record on the attestation of Max Meyerhardt, as notary-public, because at that time he was acting as the attorney at law of the mortgagees.

(2d.) Because the mortgage does not sufficiently specify the property, the description being too vague and uncer-tain, and said property not being in the place or house where the mortgage declared it to be, nor owned nor pos-sessed by Marable, the mortgagor, at that time. The mat-ter being referred to Thomas W. Alexander, Esq., as au-

ditor, to determine and report, as it seems, not only ques-
tions of law, but of facts, etc., he overruled the first excep-
tion taken to the mortgage of Mayer, Son & Co., and after
paying superior liens to those of contestants, with their
full consent and approbation ($322.08), of the remainder,
$960.75, he awarded the sum of $550, the amount brought
by the sale of the bar-fixtures and furniture, to the mort-
gage held by Mayer, Son & Co., holding this property was
sufficiently described therein; but as to the stock mort-
gaged, he held the description insufficient, and awarded
the amount, $410.75, arising from the sale of the same to
the execution controlled by Wardlaw. Upon the return
of this report to the superior court, exceptions were
filed thereto, and upon consideration thereof, the judge,
who tried them, by consent of counsel, without a jury, or-
dered and decreed the entire amount raised from the sale
of fixtures and stock to be paid to the mortgage of Mayer,
Son & Co., at the same time decreeing the reformation of
their mortgage in accordance with their prayer for that
purpose. To this decree Wardlaw excepted, and brought
the case to this court by bill of exceptions and writ of
error directed to and served upon Mayer, Son & Co. and
J. M. Parish & Co.

1. Although Mr. Myerhardt was the attorney at law of
Mayer, Son & Co. both before and after the execution of
the mortgage, yet, by express agreement of the parties, he
acted as the attorney of both in the preparation of that
instrument, and his action in so doing was rather that of a
clerk or notary in reducing to writing the contract agreed
upon between them, than of a lawyer advising the charac-
ter and form of the security given for the debt by one to
another; they arranged this for themselves, and did not
consult him or follow his advice in the matter. His attesta-
tion to the deed as a notary public was ministerial, and
not judicial or *quasi* judicial in its character, and was a
good and valid attestation, entitling the paper to record
under the law; the fact of his being employed subse-

quently to foreclose and collect the mortgage could not, by relation, affect the validity of his attestation and render void what was in its inception and at its consummation sound and lawful; had he not previously represented the mortgagees as their attorney at law in other business, or had another lawyer been employed to prosecute this claim, no one, we think, could question the sufficiency of this attestation to place this paper on record; such, at least, we are satisfied was the conclusion reached by this court in *Welsh et al. vs. Lewis & Son et al.,* 71 *Ga. R.* 387, 391, where we held that a mortgage attested by a brother-in-law of one of the parties, who was a notary public, was sufficient to admit it to record. In that case, a distinction is clearly drawn between the administration of an oath and the attestation of a deed. Indeed, this is necessarily inferable from the citations made in that case.

2. There was no error in reforming the mortgage in the particular mentioned. In a proceeding to distribute money among contending creditors, equitable principles are followed; the proceeding is one practically in a court of equity, as has been frequently held by this court, both before and since equity proceedings and practice in suits at law were allowed by express enactment. In *Burke vs. Anderson,* 40 *Ga.* 535, it was held that equity would correct mistakes between the original parties and their privies in estate or in law, except as against *bona fide* purchasers without notice, and a judgment creditor does not for that purpose occupy the position of such a purchaser, and the principle was applied to the sections of the code regulating the rights of liens existing by operation of law, although the mortgage sought to be reformed may have been unrecorded or defectively recorded. *Wall vs. Arrington,* 13 *Ga.* 88 (3d head-note), 93, where the same views are announced and enforced, and the authorities on which they rest are fully cited.

But it seems to us that there could be, under the evidence, no doubt as to the identity of the chattels embraced

v 77—40

in this mortgage, or of the mortgagor's title to or right to the possession of them; the only mistake in the conveyance was as to the location of the property at the time it was executed, and we can perceive no necessity for resorting to a court of equity to correct this slight error in order to ascertain whether the property in dispute was the same as that mortgaged to Mayer, Son & Co. This, we are satisfied, might have been done by the introduction of verbal evidence, which is fully as admissible for this purpose in a court of law as it would be in a court of equity to correct the mistake. See *Wall vs. Arrington, ut sup,* and the other cases from this and other States, together with the text writers, cited in brief of counsel. The auditor and court both found that the description of the fixtures and furniture was sufficiently specific, and we agree with the court as to the description of the stock in trade; in fact, we cannot comprehend how a description in a mortgage upon a stock of goods, articles in bulk, but changing in specifics, where the lien is lost on all articles disposed of by the mortgagor up to the time of foreclosure and attaches on the purchases made to supply their place, could be more definite than that contained in this mortgage, which enumerated the various kinds of articles of which the stock was composed. Code, §1954, and citations.

The view we have taken of these questions dispenses with the necessity, and perhaps with the propriety, of considering that made by the junior mortgagees on their application to change their position in relation to the case from that of defendants in error to plaintiff in error, they having taken no exceptions to the decisions of the court below, nor sued out any writ of error, nor in any manner joined with the other contesting creditor who brought the case to this court. It is sufficient, we think, that their counsel was heard in aid of the exception taken by the plaintiff in error; and deeming their right to the order asked wholly unnecessary, and thinking it doubtful whether we have authority to make it, we for that reason

reject it, without, however, as before stated, making any decision as to the question it raises.

Judgment affirmed.