## J. W. MILES ET AL. V. M. B. KELLEY.

Decided April 28, 1897.

**1. Usurious Notes—Money Advanced to Pay.**

One who advances money to another to pay notes of the latter bearing usurious interest, taking an assignment of the notes to himself as collateral security, can recover the money so advanced, though he knew of the usury in the notes; but can not recover upon the notes themselves, whether he knew of the usury or not.

**2. Mechanic's Lien—Homestead—Preparations to Build.**

A lot intended for a residence by the owner, who has made preparations to build evidencing such intention, becomes thereby designated as his homestead, and can not thereafter be incumbered by a mechanic's lien for the construction of the dwelling, except in the manner pointed out by the statute for creating such liens upon the homestead.

**3. Acknowledgment—Officer Disqualified by Interest—Homestead.**

A wife's acknowledment of a contract with a building association for a mechanic's lien upon the homestead, taken before a notary who was secretary of the association, was its principal stockholder, and was interested in the contract to the extent of 10 per cent commission, was invalid and created no lien.

**4. Limitation.**

Plaintiff could recover money advanced to defendant to take up his notes to another, though the notes, which were assigned to plaintiff as collateral, had become barred by limitation.

Error from McLennan. Tried below before Hon. L. W. Goodrich.

*W. S. Baker* and *A. C. Prendergast*, for plaintiffs in error.—Notes tainted with usury are void to the extent of the interest, and plaintiffs in error could not have waived their right to plead usury. Sayles' Civ. Stats., art. 2979; Miles v. Kelly, 25 S. W. Rep., 724; Bank v. Smyth, 30 S. W. Rep., 678; Building and Loan Association v. Lane, 17 S. W. Rep., 77.

A lien can only be fixed and secured upon the homestead by entering into a written contract with the husband and wife as is required by law before the material is furnished or labor is performed. Sayles' Civ. Stats., art. 3174; Taylor v. Huck, 65 Texas, 238; Reese v. Corlew, 60 Texas, 70.

The lot was the homestead of plaintiffs in error at the time the liens sued on were signed by them, to wit, on the 7th day of August, 1884, and 1st day of September, 1884, respectively, and the liens are not binding on them, because James I. Moore, the notary public, was disqualified, on the ground of interest, from taking their acknowledgments. Cameron v. Gebhard, 85 Texas, 610; Miles v. Kelly, 25 S. W. Rep., 724; Morton v. Lowell, 56 Texas, 643; Titus v. Johnson, 50 Texas, 239; Sample v. Irwin, 45 Texas, 567; Brown v. Moore, 38 Texas, 646.

The court erred in rendering any judgment against the defendants, because plaintiff's entire legal demand was barred by the statute of limitation of four years. Miles v. Kelly, 25 S. W. Rep., 724.

COLLARD, Associate Justice.—This suit was brought February 24, 1891, by defendant in error, M. B. Kelley, against plaintiffs in error, J. W. Miles and his wife, Rosa Miles, for $800, and interest at 12 per cent per annum, advanced by plaintiff to J. W. Miles, at his special instance and request, to take up the following two promissory notes:

"$1300.00.                                       Waco, Texas, July 7, 1884.

"On or before the first day of November, A. D. 1887, we promise to pay to the Waco Building Association, or order, at its office in Waco, Texas, eleven hundred and thirty dollars, with interest after maturity at the rate of one per cent per month, value received."

"$290.00.                                       Waco, Texas, Sept. 1, 1884.

"On or before the first day of January, A. D. 1888, we promise to pay to the Waco Building Association, or order, at its office in Waco, Texas, two hundred and ninety dollars, with interest after maturity at the rate of one per cent per month, value received."

Each of the notes stipulated as follows: "This note is given for labor and material furnished us by the Waco Building Association, under a

contract this day entered into between said building association and us, and is secured by a mechanic's lien on a lot or parcel of land, with the improvements thereon, in the city of Waco, county of McLennan, State of Texas. We further promise to pay this note off in monthly installments" (of $28.50 for the larger note and $7.25 for the smaller one, commencing August 1, 1884, for the larger note, and October 1, 1884, for the smaller note); "and it is agreed and understood that if we fail to pay any one of said monthly installments as it becomes due, the same shall bear interest from the time of such default at one per cent per month until paid, and the whole of this note may be then collected, at the option of the holder thereof; and we promise to pay ten per cent additional on this note as attorney's fees, should it become necessary to collect the same by law." The notes were signed by Miles and his wife.

At the time of the execution of the notes the parties—the Waco Building Association and Miles and wife—entered into a contract in writing, whereby the association agreed to furnish labor and material of value equal to the amount of the notes to enable defendants to make improvements on the lots, defendants binding themselves to accept the same. Defendants acknowledged the contract before James I. Moore, a notary public, at the time of its execution, and it was duly recorded in the proper records of McLennan County. The contract gave the association a mechanic's lien on the lots to secure the payment of the notes.

Plaintiff, the indorsee of the notes, sued on them and to foreclose the lien on one of the lots—defendants not having title to the other—for attorney's fees, etc. The petition shows that defendants had a settlement with the association July 2, 1888, having paid on the notes, December 31, 1884, $115.70; December 31, 1885, $26; December 31, 1886, $78.75; in 1887, $261.18, and in 1888, $123.70; and by such settlement it was ascertained that there was a balance due on the notes of $800, and defendants, being pressed for payment, requested plaintiff to take up the notes and have them transferred to him for his indemnity; whereupon he, at their special instance and request, advanced the amount found to be due on July 2, 1888—$800—and took the assignment of the notes to himself, with a distinct understanding with defendants that he was to be repaid the same according to the tenor and legal effect of the notes at the rate of 12 per cent interest per annum thereafter, and that the security by mechanic's lien should inure to his benefit; that the association, on the same day—July 2, 1888—indorsed the notes to him, as follows: "Pay to M. B. Kelley, without recourse on the Waco Building Association. Waco, July 2, 1888." (Signed) "James I. Moore, Sec." The lien is asked to be foreclosed on only lot No. 8, described.

June 11, 1891, defendants answered, by general demurrer and special exceptions, that a large part of the claim due by the notes was barred by limitation of four years, as shown by the petition, and that it does not show any liability on the part of Rosa Miles. The answer specially set up the marriage of defendants; that the debt is a community debt, for which the wife's separate estate is not liable. They further averred, that on July 7, 1884, they borrowed $800 from the Waco Building Asso-

ciation, for which they gave the note for $1130, the amount being made up by adding forty months' interest to the sum borrowed, which $1130 was to be paid in monthly installments of $28.50, the first to be paid August 1, 1884, and the same on the first day of each month thereafter; that on September 1, 1884, they borrowed from the association $200 and gave the note for $290, which amount was made up by adding interest on the $200 for forty months at 12 per cent per annum, to be paid in monthly installments; that they paid at divers times $990.75, pursuant to the terms of the notes; that it was agreed that if the installments were not paid as stipulated they were to bear 12 per cent interest per annum, and the association reserved the right to collect the whole of each note upon default of payment of each installment; wherefore defendants pleaded usury.

Defendants also pleaded the statute of limitation of four years as to a great part of the debt, upon the ground that the installments fell due at such time as to bar their collection at the time of suit. They pleaded payment of $894.75 to the building association and $96 to the plaintiff, aggregating $990.75. They set up homestead in the premises upon which the lien is sought to be foreclosed, and that the homestead existed at the time the notes were executed and has been so continuously to the present; that before the execution of the notes and liens defendants had contracted with W. S. Martin to build the house on the lot and they had placed lumber and material thereon and claimed the lot as their homestead, wherefore the liens were nullities; that the alleged liens are not such contracts in writing as are required by law to create a lien on the homestead; that the acknowledgments to the contracts were taken before James I. Moore, a notary public, who was at the time secretary of the association and interested in the transaction to the extent of 10 per cent as commissions on the amount loaned, and he was a large stockholder in the association, holding at least $50,000 of its stock, wherefore he was disqualified to take the acknowledgments, and the liens were of no force or effect.

March 7, 1896, plaintiff filed a supplemental petition, containing a general denial, and in reply to the plea of limitation set up a written acknowledgment of J. W. Miles that the debt was just and an express promise to pay it, of date July 26, 1890.

Defendants, by supplemental answer, excepted to the averment of new promise of J. W. Miles to pay, upon the ground that it showed the promise was barred by the statute of limitation of four years.

On March 19, 1896, the court, trying the case without a jury, rendered judgment for plaintiff against J. W. Miles for the sum of $1346.50, to bear interest at 12 per cent per annum, foreclosed the lien on lot No. 8 against both defendants, and directed issuance of an order of sale.

We find the facts as follows: Defendants executed the notes at the time and for the amounts alleged, and at the same time executed the alleged contracts of lien, which were duly acknowledged by Miles and wife before James I. Moore, a notary public in McLennan County, her acknowledgment being in due form as required by statute in the convey-

ance of the homestead, and the contracts were duly recorded and in time.

Moore was secretary of the association and its manager, and had an interest as commissions of 10 per cent upon all its gross earnings as his fixed compensation, and owned a large part of its stock—$30,000.

Defendants are and were husband and wife, as by them alleged, at the time the written contracts of lien were executed.

Defendant Miles, not having a homestead, made a contract with Governor Ross to purchase the lots, some time in June, 1884, and paid $20, but did not secure a deed to lot No. 8 until July 5, 1884. He failed to complete the purchase of the other lot, and lot No. 8 only is in controversy. At the time of the contract to purchase he intended the lot as his homestead and contemplated building his home on the lot, and contemplated obtaining a loan from the building association with which to make at least a part of the improvements—the house. He applied to James I. Moore, the secretary of the association, for a loan, and was informed that if the title was all right he could get the loan for the purpose stated. After Miles received a deed to lot No. 8 Moore agreed to loan him $800 to build his house. Defendant Miles had some money before the loan—about $700—which went into the house built; but, fearing it would not be enough, he secured the loan of $800, and this proving to be insufficient, he secured the other loan, September 1st, of $200. After he had made the arrangement to secure the loan of $800, he engaged a carpenter (Martin) to do the work, and had him to make out a bill of lumber to go into the house, and Martin commenced work on the house. This was in the latter part of June or about the first of July, 1884—before the notes and lien contracts were executed. The house was under pretty good headway before the first note was made. Some of the lumber was hauled on the ground before the first note for $1130 was made. The lumber was sent by direction of James I. Moore, manager of the association, and the association paid for it under the arrangement Miles had made with it to loan the $800. The hardware was paid for in the same way. Miles paid the carpenter (Martin) about $200 personally for the work, except $28 which was paid by the association.

Defendant had a well dug on the lot before July 1, 1884, in order that the workmen might have water for mortar in erecting chimneys for the house.

James I. Moore knew the improvements were for a homestead, and this is the reason he had acknowledgment of the wife made to the lien contracts.

The first note—for $1130—was made July 7, 1884. Miles and wife moved into the house in August, 1884, before it was finished, and before the second note was made, and before the contract of lien was executed and acknowledged on the last loan.

On the first loan Miles received only $800, and on the second only $200, interest being added in, as alleged by defendants, to make the amount of principal in the face of the notes—$1130 and $290. The notes stipulated for payments in installments, as alleged, and in case of

default of payments of installments as they fell due they were to bear 1 per cent interest per month, and the whole of each note was to become collectible at the option of the holder. The principal of the notes bore interest at 1 per cent per month after maturity.

Miles made payments on the notes as alleged by him, making the last payment—$96—to plaintiff, who had become the legal holder.

Plaintiff became the legal holder of the notes as follows: The association was pressing Miles for payment, and he got plaintiff to take up the notes. On July 1, 1888, he and plaintiff went to see James I. Moore, secretary, who, at request of Miles, ascertained the amount due, as per terms of the note, to be $814.67. Miles paid $14.67, leaving the balance due $800. Plaintiff advanced the $800 to pay the balance, at the request of Miles, and the notes were transferred and delivered to him by the indorsement alleged by plaintiff, to indemnify him for the advance of the $800, all at the request of defendant Miles, he agreeing to pay to plaintiff the $800 advanced.

The testimony shows that plaintiff knew the notes were bearing usurious interest at the time they were indorsed to him. This fact of his knowledge is, however, immaterial.

Mrs. Miles was not present when her husband made the arrangement to get the money from plaintiff to take up the notes, nor when the money was advanced, and took no part in the transaction. J. W. Miles acted alone in the agreement with Kelley, the plaintiff, and his wife knew nothing of the agreement with plaintiff until some time after it was made, did not consent to it, and had nothing to do with it. Miles and wife were living in the house as their home when plaintiff became the owner of the notes.

Defendant in error has not briefed the case. It will be considered upon the brief of the plaintiffs in error, but we do not think it necessary to take up the points in the order presented in the brief, but will merely state our views of the case in the following conclusions of law:

1. The suit is by plaintiff to recover of defendants $800, and the interest alleged, advanced by plaintiff to J. W. Miles, to secure the payment of which the notes of Miles and his wife, with the lien incident thereto, were transferred to plaintiff, and plaintiff, being thus the legal holder of the notes and the lien, sued also thereon and to foreclose the alleged lien. This is the status of the suit. Plaintiff had the right to sue on the claim for money advanced and the interest as against J. W. Miles, and the testimony authorized the recovery against him for the same. To that extent the judgment of the lower court is correct.

As to the suit on the notes: The contract was usurious, and a moneyed judgment could be had only for the balance of the principal unpaid, the interest part of the contract being void, in the hands of the plaintiff— the indorsee—whether he was an innocent purchaser of the notes before maturity or not, and whether or not he had notice of the usurious contract. Andrews v. Hoxie, 5 Texas, 172. Such a note is void as to the interest in the hands of an innocent holder. It gathers no validity by circulation. Gilder v. Hearne, 79 Texas, 120; Maloney v. Eaheart, 81

Texas, 284. The statute declares the contract void to the extent of the interest if it be usurious, and the rule stated is based on the statute.

2. The lot on which the improvements were placed was the homestead of Miles and wife at the time the notes and the lien were executed. It was the intention of Miles to make the lot a homestead before the notes were executed, and acts had been performed—as the commencement to erect a house on the lot, preparation to build—accompanying the intention, showing an active purpose to make the property a homestead, and this constituted homestead in fact before the notes and lien contracts were made. A mere intention to occupy as a homestead at some future time is not sufficient to make homestead. Brooks v. Chatham, 57 Texas, 33; Franklin v. Coffee, 18 Texas, 415; Fort v. Powell, 59 Texas, 322; Gardner v. Douglass, 64 Texas, 79. Yet if the intention is followed or accompanied by some act as preparations to improve for a homestead or to occupy as such, homestead will attach to the property and it will in fact exist. (See foregoing authorities.) The homestead will be established in such case in advance of occupancy. Cameron v. Gebhard, 85 Texas, 610. The facts of this case show that the intention and acts done in pursuance thereof make homestead of the property before the notes and lien were executed, and it was homestead before.

The court below was of opinion that, as the intent to make homestead of the property and the acts pursuant thereto were attended with the intention to procure the loan from the building association and to create the lien, and the loan was so procured and the lien executed after the homestead rights had been acquired, it should be an exception to the rule, and as it would be unjust to allow the homestead in such case to defeat the lien, it should be enforced. We do not concur in this view. The association trusted Miles without lien or security for any advances made before the lien was executed by him and his wife, and pending this interval the property became homestead. After this no mechanic's lien could be executed to bind it without a contract to that effect in writing, signed by the parties and acknowledged by the wife in the form required to make a valid sale of the homestead.

3. The property then being homestead, to create the mechanic's lien her acknowledgment in the form stated was indispensable. Her acknowledgment was a nullity. James I. Moore, the notary who took her acknowledgment, was disqualified from performing the act, because of his interest in the transaction. He was general managing agent for the association, made the loan, and was a large stockholder in the concern, and was interested to the extent of his commissions—10 per cent on the gross earnings of the business carried on. He could not take the acknowledgments of the parties, and his act in attempting it was a nullity. Sample v. Irwin, 45 Texas, 573; Brown v. Moore, 38 Texas, 648; Morton v. Lowell, 56 Texas, 646; Kutch v. Holley, 77 Texas, 222; Rothschild v. Daugher, 85 Texas, 333. From the foregoing it must be held that there was no lien, and it was error to enforce it.

4. As to limitation: The suit, as before shown, was primarily on the loan by plaintiff to J. W. Miles, and ancillary to this a suit on the col-

lateral security. There was no plea of limitation as to the suit on the $800 loan. We understand the plea to apply only to that part of the notes stipulating for payments of monthly installments by which the notes were to be discharged. No debt is established by the notes, they only being collateral security; and as we have decided that there is no lien, the plea of limitation, not applying to the $800 debt due by J. W. Miles to plaintiff, is practically eliminated from the case, and does not require discussion.

There was no vice of usury in the loan or advance made to J. W. Miles by plaintiff. His suit for that amount on that account is not affected by the usury in the notes.

The judgment of the lower court in favor of plaintiff against J. W. Miles for the amount stated therein was not erroneous as to him, and plaintiff not complaining of the amount, it is affirmed; but it was not correct to enforce the alleged lien, because it did not exist, and to this extent the judgment should be reversed, and it is so ordered. It is ordered affirmed only as to the money demand against J. W. Miles, and costs, but in no other respect.

*Reversed as to enforcement of the lien,*
*And affirmed as to the money demand against J. W. Miles, and costs.*