CLARK WATTS v. FIRST NATIONAL BANK OF EL RENO.

(Filed Aug. 24, 1899.)

1. CHATTEL MORTGAGE—*Identity of Property*—*Evidence.* Where the evidence reasonably supports a verdict as to the identity of mortgaged chattels, this court will not disturb the finding of the jury upon this point.

2. SAME—*Execution of*—*Witnesses*—*Presumption.* When the instrument shows upon its face that it was signed in the presence of two persons, who signed the same as witnesses, the register of deeds should receive and record the same, and disqualification of the witnesses should be shown by the proof in the case. In the absence of proof, the court will presume that said witnessing is legal, and in accordance with the requirements of the statute.

3. SAME—*Notice.* Where a mortgage itself suggests inquiries which would have led to the identification of the property without difficulty, it is sufficient to charge with knowledge a third party.

(Syllabus by the Court.)

*Error from the District Court of Canadian County; before John C. Tarsney, District Judge.*

*R. B. Forrest* and *C. O. Blake*, for plaintiff in error.

*Criley & Baxter*, for defendant in error.

### STATEMENT OF THE CASE.

This was an action of replevin, begun December 29, 1897, by the First National Bank of El Reno, plaintiff, against Clark Watts, defendant, in the district court of Canadian county to recover the possession of certain cattle, said cattle being described in plaintiff's petition as 30 head of steer yearling calves, formerly branded thus,——— on each jaw, now branded thus, X, on each jaw, and each of the value of $9; 30 head of heifer yearling calves, formerly branded thus,——— on each jaw, now branded thus, X, on each jaw, and each of the actual value of $9. The plaintiff claimed a special ownership in the cattle by virtue of a chattel mortgage thereon given by J. E. Madison, on the 23d day of November, 1897, at El Reno, Oklahoma, to secure the payment of $422.12. Said mortgage is set forth in plaintiff's petition, and a copy thereof attached, and marked "Exhibit A." The said mortgage describes the cattle substantially as in the petition, and adds the further description: "Better known as the cattle bought of Wilson and Coffey. All of the above named cattle are now located six miles due east of El Reno, Oklahoma Territory." Said mortgage was witnessed by B. B. Burrell and T. J. Stewart, lows:

"Register's Certificate. Territory of Oklahoma. Canadian county—ss.: I, Jeff Potter, register of deeds in and for said county, hereby certify that the within is a true copy of the chattel mortgage filed in my office in

El Reno, Oklahoma Territory, November 24, 1897, at 9:15 o'clock a. m. Filed in Stub Book F, page 2323.

"JEFF POTTER.

"Register of Deeds."

The defendant filed his answer, denying every material allegation in plaintiff's petition, and asking for the return of the property and for damages. The case was tried April 29, 1898, before the court and a jury, and the jury returned a verdict as follows: "We, the jury, find for the plaintiff that it was at the time of the commencement of this suit entitled to the immediate possession of forty-two (42) head of cattle described in plaintiff's petition; that the same are unlawfully and wrongfully detained by the defendant, and are of the value of $346.50,"—upon which verdict the court rendered judgment as follows: "That the plaintiff have and recover of and from the defendant forty-two (42) head of cattle described in plaintiff's petition, and some of which are described in the sheriff's return on the order of replevin issued in this action as being branded thus, X, on each jaw, and afterwards branded by the sheriff thus,—on the nose of each animal, just in front of the said cross brand, for further identification; not including such of said cattle so marked and purchased of John Osman by said defendant as may be so marked and branded, not more than eleven in number. And that in case the return of said forty-two (42) head of cattle cannot be had, that the plaintiff have and recover of the defendant the sum of $346.50, with 7 per cent. thereon from the commencement of this action, and the costs of this action,"—to which verdict of the jury and finding of the court the defendant duly excepted, now excepts, and brings the case here for review. Affirmed.

Opinion of the court by

IRWIN, J.: The first ground for reversal urged by the defendant is: "No finding of the amount due the plaintiff is made by the jury." But counsel say the court undertook to cure this failure by the finding of such fact. We do not think the finding of the court is susceptible of this construction. We think the verdict of the jury was broad enough to authorize the court's finding. True, the jury do not, in so many words, say there is due the plaintiff from the defendant the sum of $346.50; neither could they render such a verdict in this class of a case. But we think that the language used by the jury in their verdict, "that the same are wrongfully and unlawfully detained by the defendant, and are of the value of $346.50," would sustain the alternative judgment for the return of the cattle, or the payment of the amount which is found by the court, based thereon.

We cannot agree with the counsel for the plaintiff in error that there is nothing in the verdict of the jury indicating the time when the jury fixed the value of the cattle, because we think the language of the verdict clearly indicates that the value fixed by the jury was at the time of the commencement of the suit.

Counsel for plaintiff in error insist that the fact is undisputed that this mortgage was given upon the cattle which were mingling with large numbers of other cattle of the same kind and character, similarly branded, and of the same grade and description, and that the cattle described in the mortgage could not have been identified or distinguished from the others at the time this mortgage was given; but we think a careful reading of all the evidence in the case will not bear out this contention, but

will rather tend to establish the contrary. The language of the mortgage itself tends to show that the mortgagor had no other property of the same description in his possession. The testimony of Wilson is that Wilson and Coffey sold Madison 56 head of cattle in November or December, and at that time Madison had no other cattle; and the mortgagor describes the cattle mortgaged as those bought of Wilson and Coffey. True it is that Wilson says Madison was wintering some other cattle for him, which were in the same field with the mortgaged cattle, but he says they were of a poorer grade and an inferior quality; in fact, to use his language, he says: "They were the poorest in the bunch; they were the tailings,—the sorriest cattle,"—so they were easily to be distinguished from the others, and were not of the same grade or of the same description.

The next contention is that, at the time the cattle in question were purchased by Watts, the record does not show that the mortgage of the bank was recorded as required by law, and consequently was no notice to Watts, and that his purchase was in good faith, and without notice, either actual or constructive, of the mortgage to the El Reno Bank. The record shows that it is admitted by the defendant's counsel that the intsrument offered in evidence by the plaintiff is a certified copy of the original instrument on file in the office of the register of d⸱ The only objection there raised was that the instrument was not a chattel mortgage; but, in our judgment, this agreement of counsel amounts to this: that the copy might be treated in every respect as the original. In fact, under our law, a copy was all that could be produced by the plaintiff, as the Statutes of Oklahoma of

1893, (section 24, ch. 51,) prohibit the removal of the original mortgage from the office of the register before the same is canceled. The question then is, does the copy introduced, together with the indorsements thereon, show a legal recording? It is contended that the recording of the mortgage was improper, because the mortgage does not show that it was executed before two witnesses, as required by the statute of this Territory. While it is true that on the instrument there appear the signatures of two persons as witnesses thereto, yet it is urged by the defendant that the two witnesses thereon, to wit, B. B. Burrell and T. J. Stewart, were incapacitated from acting as witnesses to said instrument, by reason of their interest, as it is alleged they were the president and cashier of the bank to whom the mortgage was given, and hence were interested parties; and, if so, it is contended that they could not legally act as witnesses. An inspection of the Statutes of Oklahoma of 1893, (chapter 51, section 23,) will show the following provision: "A mortgage of personal property must be signed by the mortgagor in the presence of two persons who must sign the same as witnesses thereto, and no further proof of acknowledgment is required to admit it to be filed." The statute makes no express limitation or prohibition as to any class or kind of persons who shall act as witnesses. It is silent as to the interest or lack of interest of the witnesses, and the only requisite expressly required is that it shall be signed by two persons as witnesses, and, when this is done, it shall be admitted to filing in the office of the register of deeds.

The question is, can or should the courts enlarge upon the requirements of the legislature in this particular?

Should the courts add to or require other or different qualifications on the part of such witnesses than such as the legislature in its wisdom has seen fit to prescribe? It is contended that this act of the witnesses takes the place of acknowledging, and should be governed by the same rules, and held to the same degree of strictness, and that impliedly, at least, interested persons cannot be witnesses or take the acknowledgment to such an instrument, and authorities are cited to sustain this contention. Among the many authorities cited by the plaintiff in error's counsel is a case from our own supreme court, in the case of *Campbell v. Richardson*, 6 Okla. 375. But an examination of that case will show that all that is held there is that two witnesses to the execution of a mortgage on personal property was an imperative requirement of the law, in order to render such a mortgage good as against the interests of creditors or *bona fide* purchasers without notice, and, as this contention is settled beyond controversy by the express terms of the statute, we are unable to see that this case throws any light on the case in hand. We have carefully examined the authorities cited, and as many others as were at our command, and, so far as we can ascertain, the holdings of the courts on this subject have been that an interest such as will invalidate an acknowledgment to an instrument like the one in question must be a personal interest. We do not think that the fact alone that a person was an officer of a bank, or a corporation, would necessarily make him an interested person, in the meaning of the law, so as to render an acknowledgment taken by him, where the bank or a corporation was a party, necessarily void.

In the case of *Groesbeck v. Seeley*, 13 Mich. 329, cited. by counsel, this question is not discussed to any great extent, nor does it seem to have been relied upon to any great extent, by counsel, and it was not the controlling point on which that case was decided. The court there decided the case upon the grounds that the legislature exceeded its authority in making the tax law on which the action was founded. On the point of interest in the acknowledging officer, all the court there say is: "We should have no hesitation in holding that a person could not take the acknowledgment of a deed made to himself." On this position, it seems to us, lawyers could not disagree. But we think this is not the case at bar.

The cases of *Stevens v. Hampton*, 46 Mo. 404, *Wasson v. Connor*, 54 Miss. 351, and *Bowden v. Parrish*, (Va.) 9 S. E. 616, cited by counsel, are all on the same line, and are cases where the person taking the acknowledgment was named as the trustee in the trust deed acknowledged, and where, as a matter of fact, a person is acknowledging his own deed, and is an interested party to the extent of fees and commissions, as trustee, and in this particular are not parallel cases with the case in question, and, as it seems to us, present a very different question.

The case of *Miles v. Kelley*, reported in 40 S. W. 599, is a Texas case, which in its facts comes a little nearer the case at bar, but in that case the acknowledging officer was the managing agent of the association to whom the mortgage was given, and was pecuniarily and financially interested in the instrument, as he received a per cent. of the gross earnings of the association, and in this, in our judgment, it differs materially from the case under consideration.

The case cited by counsel for plaintiff in error of *Kothe v. Krag-Reynolds Co.*, 50 N. E. 594, an Indiana case, was where the acknowledgment was taken before a notary who was an officer of the corporation giving the mortgage. Such acknowledgment was held bad, because in the state of Indiana there was a positive statute prohibiting, in express terms, any notary public from taking any acknowledgment in the business dealings of any bank or corporation in which said notary held any office or position, and this acknowledgment was a violation of the express terms of this statute, and hence differs from the case at bar.

We think the just, reasonable, and correct rule in this class of cases is the one laid down by the supreme court of Missouri in the case of *Stevens v. Hampton*, reported in 46 Mo. 408. The rule there laid down is this: "When the recorded instrument shows on its face that the acknowledgment was taken by a party in interest, it is improperly recorded, and is not constructive notice; but when it is fair upon its face it is the duty of the register to receive and record it, and its record operates as notice, notwithstanding there may be some hidden defects."

Now, applying this rule to the facts in this case, we think the instrument was properly and legally recorded. There is absolutely nothing in evidence, as shown by the record, to prove that Stewart or Burrell, or either of them, were stockholders in the El Reno bank, or had one dollar's worth of financial interest therein, and we do not think that the fact that they were officers of, or held positions therein, would justify us in presuming they were stockholders, in the absence of proof on this subject. This instrument, on its face, seems to be fair, and

seems to have been drawn, executed, and recorded with all the requirements of the law, and we do not think we would be warranted in holding otherwise, in the absence of proof showing the contrary to be true. As we regard it, to hold that the witnesses to this instrument were interested parties, and incapable, on that account, of acting in that capacity, would be to indulge in a presumption the truth of which there is no evidence in the record to sustain. It may or may not be true that the witnesses are interested parties, but, if so, there is no evidence in this record to show it. The instrument, as introduced in evidence, on its face shows a substantial compliance with the law; and under the rule adopted in the Missouri case cited, which we think is the true rule, it must be considered as notice to the world of the existence of the mortgage in question, and charges defendant with notice that, at the time he purchased the cattle in question from Madison, the same were subject to the chattel mortgage to the bank, and the only title acquired by him was such title as Madison had in the cattle; and the title so acquired was subject and second to the rights and interests of the First National Bank of El Reno.

True it is, as stated in the instruction asked for by the defendant's counsel, the defendant had the legal right to purchase the cattle in question from Madison, without making an examination of the records to ascertain the condition of Madison's title; but in doing so he took his own risk, and took chances as to what the right, title, and interest of Madison were. This action of replevin is based upon the theory that, at the time of the commencement of the suit, the defendant unlawfully and wrongfully detained from the plaintiff the personal

property, to wit, the cattle described in plaintiff's peti-tion; and the gist of the action is such wrongful and un-lawful detention, and a recovery does not depend upon the fact of whether the sheriff executing the writ did or did not levy upon the exact and particular cattle de-scribed in the petition and in the mortgage in ques-tion. He may have levied upon all the said cattle, or any number or part thereof, or he may have, by levy, secured none of the cattle described in the plaintiff's petition. The question to be tried by the jury was, did the defendant, at the time of the commencement of the suit, have and detain from the plaintiff the cattle described in his petition? and, if so, the verdict of the jury should be for the return of the cattle, or, in the alternative, the payment by the de-fendant to the plaintiff of the value thereof, as fixed by the jury. Such a verdict is authorized by the statutes of Oklahoma.

Counsel for the plaintiff in error complain that the court erred in refusing special instructions asked by the defendant in the court below, Nos. 6, 8, 9, 11, 12, 13, 14, 16, and 17. We think instruction No. 6 is bad, for the reason that it makes the statement: "It is not con-tended in this trial that the defendants acted in bad faith in purchasing the cattle of Madison." This is a conclusion to be drawn from the evidence by the jury, and not by the court. It is usually bad taste for the court to state in instructions what is and what is not contended for by the different sides in a law suit. The evidence will develop this, and it is the province of the jury, and not the court, to determine the contention of the parties, as shown by the evidence. Instruction No. 8

is as to the legal effect of the defendant not requiring
a written bill of sale of Madison at the time of the pur-
chase of the cattle in question, and the point therein con-
tained is fully and completely covered by the court in
general instruction No. 7. We think instructions Nos.
9, 11, 12, 13, 14, 16, and 17 were properly refused, as they
do not, in our judgment, state the law correctly. We
have examined the court's general instructions, and
think they clearly and fairly state the law on the ques-
tions involved in this case; and while some of the special
instructions asked by the defendant come very close to
the line of being good instructions, and might, we think,
have been given by the court without committing error,
on the whole we cannot see that the rights and interests
of the defendant have in any way been jeopardized by
the instructions.

The next and only remaining question in the case is,
were the cattle properly described in the mortgage filed,
as against the interests of the defendant, he being a sub-
sequent purchaser; and did the mortgage charge him with
notice? These cattle were described as 30 head of year-
ling steer calves, and as 30 head of yearling heifer calves,
and the proof of how many of the cattle taken were steers
and how many were heifers is not as complete and satis-
factory as it might be, but, for the reasons stated above,
we do not regard this as very material. We think the
sex of the cattle is merely one of the means of identifica-
tion, and is a descriptive feature, and not a controlling
element in determining what cattle were included in the
conveyance.

Mr. Jones, in his work on Chattel Mortgages (3d Ed.,
sec. 54,) says: "A description which, without stating the

location of the property, would be regarded as too indefi-
rite, may be rendered sufficiently definite and certain by
making the mortgage itself indicate where the property
may be found upon inquiry."

In the case at bar, the cattle described were said to be
located at a particular place, at a certain distance from,
and in a certain direction from, El Reno, by the use of
which the cattle could be located; thereby coming within
the definition of a good description as given by Mr.
Jones in his work on Mortgages. 1 Cobbey, Chat.
Mort. p. 170, section 170, says: "When a mortgage itself
suggests inquiries which would have led to the identifi-
cation of the property without difficulty, it is sufficient
to charge with notice third parties."

In the case of *Buck v. Bank*, 29 Neb. 407, 45 N. W. 776,
the following description was held good in a chattel
mortgage: "Ninety-five head of steers, one year old this
spring, marked as follows: Right ear cropped, and
notch cut out of the under side of the left,—being same
cattle I have this day purchased of Welcome Mowery,
being all the cattle I now have thus marked. Said cattle
are to be kept in Seward county, Neb., except during the
herding season, in which they are to be kept in Butler
county, Neb."

From the descriptions held good by the authorities
cited, we have no hesitation in saying that the descrip-
tion contained in the mortgage in question is sufficiently
definite and certain to be notice to third parties of the
cattle contained in the mortgage of the bank. But we
regard the identification as a question of fact, to be de-
termined by the jury from the evidence in the case, and

—42

we have repeatedly held that, where a question of fact was determined by the jury, this court would not disturb such finding where the evidence would reasonably sustain the verdict, and in this case we think a reading of the evidence will show that there was evidence sufficient to reasonably sustain the verdict of the jury. This rule, we think, has been followed almost universally by the courts of the various states and territories.

In the case of *Bank v. Ratkey*, 79 Iowa, 216, 44 N. W. 362, the court says: "Where there is some evidence as to the identity of mortgaged chattels, this court will not disturb the finding of the jury on this point;" and this we think is the proper ruling to follow, and which we will follow in this case; and after careful examination of the entire record, showing the evidence, instructions, pleadings, and rulings of the court, we are of the opinion that substantial justice has been done, and hence the judgment of the lower court will be sustained.

All of the Justices concurring.