535, 561.   BETTS-EVANS TRADING COMPANY *v.* BASS,

and *vice versa.*

1. Where the controlling question in a case is presented by a cross-bill of exceptions, and the judgment of the lower court thereon is reversed, the writ of error issued upon the main bill of exceptions will be dismissed.

2. An officer, authorized by law to attest the execution of deeds, mortgages, bills of sale, and other papers is disqualified to attest such writings, when executed (whether as conveyances or as security) to a partnership in which he is a partner, or to a corporation in which he is a stockholder. The record of a written instrument, whether the

same purports to create a lien, or to convey or to reserve title, which is attested by a stockholder in a corporation in whose interest such writing is executed, is unauthorized and invalid, and effects no notice of the existence or contents of such instrument.

(a) It was error not to exclude the instrument in question in this case, upon proper and timely objection to its attestation and record.

Trover, from city court of Ashburn—J. A. Comer, judge pro hac vice. April 19, 1907.

Argued October 23,—Decided October 29, 1907.

*R. L. Tipton, J. H. Tipton,* for plaintiff.

*A. J. Davis, J. H. Pate, Z. Bass,* for defendant.

RUSSELL, J. The Betts-Evans Trading Company complained, by a bill of exceptions, of the judgment of the city court of Ashburn awarding a nonsuit; and Bass, the defendant in the court below, filed his cross-bill of exceptions. The Betts-Evans Trading Company filed, in that court, an action of trover, to recover a sorrel horse to which it claimed title. There was also filed an affidavit for bail. The defendant, in his plea, denied all the allegations of the plaintiff's petition, except as to the jurisdiction of the court. On the trial the plaintiff offered in evidence a note evidencing a conditional sale with reservation of title by the Betts-Evans Trading Company, attested by J. B. Bozeman, notary public of Worth County, Georgia, and duly recorded. On the instrument in question appeared a credit of $90. In the testimony of the first witness in behalf of the plaintiff, it appeared that J. B. Bozeman was a stockholder in the plaintiff corporation at the time he attested the note and paper in question. The defendant's counsel moved to rule the note out of evidence, upon the ground that it was not properly attested,—that the testimony showed that at the time of the attestation Bozeman was a stockholder in the Betts-Evans Trading Company; and the note, not being properly attested, was not admissible as against the interest of the defendant. This motion the court overruled. The plaintiff proceeded to introduce testimony to show that the horse was, at the commencement of the action, in the possession of the defendant; and also proved that the corporation, at the time of the sale of the horse to one Johnson by Smith, the maker of the note, did not agree to release or cancel its reservation of title. At the conclusion of the plaintiff's evidence the defendant moved for a nonsuit. The court overruled

this motion. The motion to grant a nonsuit was upon the ground,. that the defendant, Bass, was manager for the Turner County Stock Company, and the evidence showed that the possession of Turner was as manager for the Turner County Stock Company,. and, for that reason, was its possession, and that the evidence did not show that Bass individually was in possession of the horse. The court allowed the plaintiff to reopen the case and introduce further testimony, for the purpose of showing Bass's possession of the horse at the time of the demand. At the conclusion of the additional testimony for the plaintiff, the court awarded the nonsuit, upon the ground, as it appears from the judge's oral statement in the record, that the possession of the horse was shown to be in the Turner County Stock Company, and not in Bass as an individual.

Plaintiff in error in the main bill of exceptions insists that the court erred in granting a nonsuit, because the title to the property in question was clearly shown to be in the plaintiff in error, and possession of the property was proved to be in the defendant, Bass, and conversion of the property by him .was shown. In the cross-bill, exception is taken to the judgment overruling defendant's special demurrer to the fourth paragraph of the petition, and to the ruling admitting in evidence the conditional-sale note, and to the refusal of the court to withdraw this note from evidence, for want of proper attestation. We think the court should have sustained the special demurrer, and should have required the plaintiff to state in its petition the date from which it claimed that the defendant was liable for hire. We are further of the opinion that if the plaintiff had proved title in itself and constructive notice of that title to the defendant, and that the horse was in the possession of the defendant, even though such possession was in his capacity as manager of the Turner County Stock Company, it would have been error to award a nonsuit.

The first thing that the plaintiff had to prove was that the Betts-Evans Trading Company had title to the horse in question.. The plaintiff attempted to show this title by the conditional-sale note, and its record. This title was not established in any other manner. The defendant, Bass, moved to rule the note out of evidence; and had the court so ruled, the plaintiff would not have been entitled to be awarded the possession of the horse. The con-

trolling question, therefore, is presented by the cross-bill of exceptions. We think the paper containing the reservation of title in question should have been excluded from the evidence. It was uncontradicted that it was attested only by J. B. Bozeman, as notary public of Worth County, and that Bozeman was, at the time of its attestation, one of the stockholders of the Betts-Evans Trading Company. He was clearly disqualified by interest for the performance of a legal duty of such importance as would entitle to record a paper in which he himself had a direct pecuniary interest. We can see a marked difference between allowing one to be a witness in his own behalf on the trial of a case, where his testimony may be discounted or its weight diminished in consideration of his interest, and allowing such interested party to confer upon his own paper a special privilege, lien, or priority which may be antagonistic to the rights of others. The witness testifies in the bright sunlight of judicial investigation, under the scrutiny of the court and jury, and is subject to cross-examination; but to allow an officer, in private or public, to discharge a function in his own interest, by which special rights accrue to him, is obnoxious to public policy and liable to be productive of fraud. We do not see that a clerk who has no interest conditional upon the profits might not, as notary public, attest deeds, mortgages, or conditional bills of sale in behalf of his employer; or that a cashier or other officer of a bank, who owns no stock therein, might not do the same thing; though this would be of doubtful propriety.

The exact point now presented to us, so far as we are able to find, has not been decided in this State; but, upon every ground of public policy and good morals, we are compelled to hold, that a partner who may be an officer authorized to attest papers officially is disqualified to attest instruments taken in behalf of the partnership, or in which the partnership has a pecuniary interest; and that a stockholder in a corporation, though he may by law be authorized to attest papers for others, is disqualified to attest officially, so as to entitle them to record, any papers in which the corporation, or in which he as a stockholder, has a pecuniary interest. Certainly one authorized by law to attest writings so as to entitle them to record would be disqualified from attesting an instrument drawn in his own interest, either to secure a debt or to convey title to himself. We apprehend that this would not be

46

disputed. And though in case of a partnership or of a stock-holder in a corporation the degree of pecuniary interest would be less, the principle would be unchanged. A party at interest is competent to testify, as a witness, to the fact of the execution of a writing; but there is a difference of great import to the rights of third persons between testifying to the execution of a paper, and the official attestation of such papers as are required by law to be formally attested so as to admit them to record. Official attestation is not strictly judicial, but it is of judicial nature, and requires judicial fidelity. The probative force of the attestation by an officer authorized to attest a deed, mortgage, or other like paper is such that if the paper to be recorded has not been thus attested, it requires the oath of a witness to admit such paper to record; and after record this probative force of the official attestation is again recognized by the courts. Not only because of this probative effect so accorded to the act of attestation by an officer authorized to act, but also on account of the usually important consequences of the writing itself, public policy forbids that the act of witnessing, and by his signature certifying the signature of the maker, shall be exercised by an officer who is financially interested in the conveyance. After such an instrument has been recorded, the execution of the writing by the maker is presumptively established by the attestation, subject to impeachment only by proof to the contrary, or by evidence of fraud or imposition in the procurement. Certainly a person financially interested should not be permitted to impart such characteristics and intrinsic elements to a paper, to his own benefit and to the detriment of others. Our view is sustained by the following authorities: Ogden Bldg. Assn. *v.* Mensch, 196 Ill. 554 (63 N. E. 1049, 89 Am. St. R. 330); Hayes *v.* Southern Home Assn., 124 Ala. 663 (25 So. 527, 82 Am. St. R. 216); Devlin on Deeds, §476; Smith *v.* Clark, 100 Iowa, 605 (69 N. W. 1011); Miles *v.* Kelly, 16 Texas Civ. App. 147 (40 S. W. 599); Amick *v.* Woodworth, 58 Ohio, 86 (50 N. E. 437); Watts *v.* El Reno First National Bank, 8 Okla. 645 (58 Pac. 782); 6 Cyc. 1006 (2); Siebold *v.* Rogers, 110 Ala. 438 (18 So. 312); Donovan *v.* St. Anthony Elevator Co., 8 N. D. 585 (80 N. W. 772, 46 L. R. A. 721, 73 Am. St. R. 779).

We think, therefore, the court should have excluded the instrument containing the reservation of title to the Betts-Evans Trad-

ing Company, upon the objection made by defendant's counsel. This being true, the plaintiff failed to sustain its case, and there was no error in awarding a nonsuit.  As our judgment on the cross-bill of exceptions necessarily effects a final disposition of the case, adverse to the plaintiff in error in the main bill of exceptions, it is needless for us to deal with the questions therein.

*Judgment, on the cross-bill of exceptions, reversed; main bill of exceptions dismissed.*