## SOUTHERN IRON & EQUIPMENT COMPANY *v.* VOYLES.

1. A notary public is disqualified from attesting a deed or bill of sale, so as to entitle it to record, if he is pecuniarily or beneficially interested in the transaction.

2. A stockholder of a corporation bears such financial relation to it that he is disqualified, on account of interest, from attesting as a notary a deed or bill of sale to which the corporation is a party.

3. Where a corporation sells property and takes from the vendee a conditional bill of sale, reserving title in the vendor until the purchase-price is paid, and the vendee's signature is attested by a notary public who is a stockholder of the corporation, and where the conditional bill of sale is recorded, in a contest between the conditional bill of sale and a junior lien such record will not give the conditional bill of sale priority over the younger lien, if the disqualification of the notary was known to the official of the corporation conducting the transaction, although such disqualification may not appear on the face of the paper.

4. A junior attachment levied on the property embraced in the conditional sale thus illegally recorded, but founded on a debt antecedent to the conditional bill of sale, has priority of lien over the conditional bill of sale.

JUNE 12, 1912.

Claim. Before Judge Brand. Clarke superior court. July 4, 1911.

*Hamilton McWhorter* and *Lamar Rucker,* for plaintiff in error.
*Thomas F. Green* and *Cobb & Erwin,* contra.

EVANS, P. J. An attachment issued in favor of George W. Voyles against W. S. Pickett, and was levied, on November 10,

1910, upon two railroad cars. A claim was interposed by the Southern Iron and Equipment Company. On the trial it appeared that the cars were sold by the claimant to the defendant in attachment, who executed to the claimant, on October 31, 1910, an instrument, wherein it was contracted that the title to the cars was to remain in the claimant until the entire purchase-money was paid. The instrument was attested by two unofficial persons and a notary public. It was recorded on November 18, 1910. The president of the claimant company and the notary public testified that the notary was a stockholder of the claimant at the time of the execution of the instrument, and had been such from the organization of the company in 1903 continuously to the time of the trial. The court directed a verdict for the claimant, and afterwards granted a new trial. The claimant excepted.

The controlling question in the case is whether a conditional bill of sale, attested by a stockholder of the claimant corporation, who is a notary public, and recorded within the statutory period, shall prevail over the lien of a subsequent attachment on the property. The statute provides that when personal property is sold and delivered with the condition affixed to the sale that the title shall remain in the vendor until the purchase-price shall have been paid, such conditional sale, in order for the reservation of title to be valid as against third persons, shall be evidenced in writing. The statute further provides that conditional sales shall be recorded within thirty days from their date, and in other respects shall be governed by the laws relating to the registration of mortgages. Civil Code, §§ 3318, 3319. In order for a mortgage to be entitled to registry it must be executed in the presence of and attested by, or proved before, a notary public or justice of any court of this State or a clerk of the superior court (and, in case of real property, by one other witness). Civil Code, § 3258. A mortgage recorded without due attestation or probate shall not be held notice to subsequent bona fide purchasers or younger liens. Civil Code, § 3262. The contention is that the conditional bill of sale was illegally attested, in that the notary public was pecuniarily interested in the transaction, and therefore its record was not constructive notice of its existence to the holder of the younger attachment lien.

The rule is universal that an officer can not take an acknowledgment of his own deed. And, "because of the probative force

accorded to the certificate, as well as the usually important conse-quences of the instrument itself, public policy forbids that the act of taking and certifying the acknowledgment should be exer-cised by a person financially or beneficially interested in the trans-action." 1 Cyc. 553. While there may be some diversity of opin-ion in the application of the rule in determining whether the officer is disqualified by interest in the particular case, the wisdom of the rule has never been doubted. The rule that interest will disqualify does not depend upon any statutory prohibition; it arises out of the fact that it is against public policy to permit a grantee or mortgagee, or other person beneficially interested in the transaction, to take an acknowledgment of an instrument in which he is named as a party or has a beneficial interest. The law contemplates that the attesting notary must not be in such pecuniary relationship to the transaction that there shall exist any temptation for him to be otherwise than impartial between the parties to the conveyance.

It is maintained in a large majority of the decided cases, on this point, that a stockholder of a corporation beneficially interested in an instrument is disqualified from taking an acknowledgment thereof. 1 Devlin on Real Estate, § 477b. See note to the case of Ardmore National Bank v. Briggs Machinery Co., 16 Am. & Eng. Ann. Cases, 133 (20 Okla. 427, 94 Pac. 533, 23 L. R. A. (N. S.) 1074, 129 Am. St. R. 747), where a large number of cases are collected and examined; Betts-Evans Trading Co. v. Bass, 2 Ga. App. 718 (59 S. E. 8). While it is conceded, under the doctrine of corporate entity, that a stockholder has no independent ownership in the corporate property, nevertheless, if the corporate property is enhanced in value, he gets the benefit of the enhance-ment in the increased value of his shares; and while this benefit may be small, the amount of beneficial interest can not be made the criterion of disqualification on the ground of interest. His shares of stock entitle him to such aliquot part of the corporate property as his number of shares bears to the entire capital of the corporation. His holding of stock may be so large that almost any transaction of the corporation may affect the value of his shares. Indeed a corporation may have only one stockholder (Exchange Bank v. Macon Co., 97 Ga. 1, 25 S. E. 326, 33 L. R. A. 800), and in such a case there would be no difference, even in degree, between the pecuniary interest of the stockholder and of the corpora-

tion. His pecuniary relation to the corporation is so intimate that it can not be said that he has no financial interest in a transaction to which the corporation is a party. Both upon reason and authority we consider a stockholder's relation to a corporation such as to disqualify him on the ground of interest from taking the acknowledgment as a notary to a conveyance to which the corporation is a party.

All the authorities agree that if an instrument discloses on its face that it is not entitled to record, the actual record of it is ineffectual to charge the public with constructive notice. *Herndon* v. *Kimball,* 7 *Ga.* 432 (50 Am. D. 406); *MacKenzie* v. *Jackson,* 82 *Ga.* 80 (8 S. E. 77); 1 Cyc. 529. There is a difference of opinion in the American courts as to the effect of a record of an instrument defectively acknowledged, where the defect does not appear on the face of the record. Some courts hold that a defectively acknowledged instrument is not entitled to record, whether the defect is apparent on the face of the instrument or not, and therefore the actual record of such an instrument does not import constructive notice. Smith v. Clark, 100 Ia. 605 (69 N. W. 1011); Kothe v. Krag-Reynolds Co., 20 Ind. App. 293 (50 N. E. 594). Others hold that where an instrument bearing a certificate of acknowledgment or proof which is regular on its face is presented to the recording officer, it becomes his duty to record it, and its record operates as constructive notice to third persons, notwithstanding there may be a hidden defect in the acknowledgment. National Bank of Fredericksburg v. Conway, 17 Fed. Cases, No. 10,037; Ardmore National Bank v. Briggs &c. Co., supra; Stevens v. Hampton, 46 Mo. 404; Morrow v. Cole, 58 N. J. Eq. 203 (42 Atl. 673). This court has never considered and adjudged the effect of the record of a defectively acknowledged instrument, where the defect was hidden, and the acknowledgment was regular on the face of the instrument, as between third parties in the determination of their respective rights. Nor do the facts require such adjudication in the instant case. But this court has decided, in at least three cases, that in a contest between a party to a defectively acknowledged instrument and an innocent third party, where the defect was hidden, such innocent third party may go dehors the record and show by extrinsic proof that the instrument was defectively acknowledged, and that as between them the record is not notice of the

existence of the instrument recorded. *Nichols* v. *Hampton,* 46 *Ga.* 253; *White* v. *Magarahan,* 87 *Ga.* 217 (13 S. E. 509); *Baxley* v. *Baxley,* 117 *Ga.* 60 (43 S. E. 436). The argument is that when one undertakes to circumvent the rights of others by the assertion of a superior right, accruing solely from compliance with a statute conferring superiority, he must show full and complete compliance with the statute. A mortgagee has no natural equity over a subsequent purchaser or lienor without notice; and before he will be given this priority by virtue of the registry laws, he must bring himself within their precise terms. In *Nichols* v. *Hampton,* supra, a mortgage on personalty was attested by an unofficial witness. The mortgage was recorded on the probate affidavit of the witness before the attorney of the mortgagee, who was a notary public. The fact that the notary was attorney for the mortgagee did not appear from the probate affidavit or otherwise. The mortgagor sold the property to a subsequent purchaser before actual record of the mortgage. The mortgage was recorded within three months of its execution, and under the statute its record within that time was notice of its existence from the date of its execution. In a proceeding to subject the property to the lien of the mortgage, the court held that an affidavit probating a mortgage, taken before the attorney of the mortgagee, who is a notary public, is not a legal affidavit, and a mortgage recorded on such probate is not legally recorded and gives no priority over a subsequent purchaser without actual notice. In *White* v. *Magarahan,* supra, the point arose in this way: Magarahan was a member of a firm who bought goods from White. As a basis of credit Magarahan represented that he was the owner of certain land, and goods were sold to the firm on the basis of that representation. At a period of the business transactions between Magarahan's firm and White, when the former did not owe the latter anything, Magarahan made a voluntary deed of the land to his wife and children. Subsequently Magarahan's firm bought other goods from White upon the original representation of Magarahan's ownership of the land. These goods were not paid for, and White obtained a judgment for their purchase-price. Execution issued and was levied on the land, and a claim was interposed by the wife and children. The deed from Magarahan to his wife and children was in the usual form, and appeared to have been attested by three witnesses, one of whom was

the clerk of the superior court. There was nothing on the face of
the deed to indicate otherwise than all three witnesses were present
and attested the deed when it was executed. On the trial it ap-
peared that when Magarahan carried the deed to the clerk's office
to have it recorded, it was witnessed only by two unofficial wit-
nesses. The clerk observed that the deed was not properly attested
for record, and called Magarahan's attention to it. Whereupon
Magarahan acknowledged the deed before the clerk; but the clerk,
instead of making the statutory certificate, simply signed his name
officially to the attestation clause. The court held that the paper
was not entitled to record, because the acknowledgment by the
maker was not certified as required by the statute, nor was the
original attestation good, because of the failure of the clerk to sign
at the time the deed was executed; and that the record was not
notice of the execution of the deed at the time it bore date, though
recorded within the statutory period. The case of *Baxley* v. *Bax-
ley*, supra, was an ejectment case. The plaintiff and defendant
claimed under a common grantor. Both deeds appeared on their
face to have been properly executed for registration, and both were
recorded. The plaintiff's deed was inferior in date to the defend-
ant's, but it was made to appear on the trial by extrinsic proof that
neither of the so-called attesting witnesses was present when the
grantor signed the latter deed. It further appeared that the
grantor handed the deed to the defendant's husband, who subse-
quently obtained the signatures of the witnesses, and in this con-
dition delivered it to his wife. On these facts the court held that
"a deed is not duly recorded on the affidavit of one whose name
was affixed to the usual attestation clause, but who did not in fact
hear the grantor acknowledge, or see him sign, the instrument."

The case in hand comes within the principle of these cases. The
circumstances attending the execution of the conditional bill of
sale authorize the inference that the managing officials of the cor-
poration knew, at the time of its execution, that the attesting wit-
ness was a stockholder of the corporation. Of course he was
bound to know the law, that a stockholder, who is a notary, can not
take the acknowledgment of an instrument to which the corpora-
tion is a party. Therefore knowledge to the corporation is im-
putable that the conditional bill of sale was not entitled to go to
record, and its procuring the record of an instrument not entitled
to record, and known to be such at the time, can not serve to defeat

the holder of a lien acquired without notice of the existence of the conditional bill of sale.

· The claimant further contends, that, aside from the defective attestation of its conditional bill of sale, it is entitled to prevail over the attaching creditor, because the latter's lien was based on an indebtedness incurred previously to the execution of its conditional bill of sale. We do not think so. The statute provides that a mortgage or conditional sale recorded without due attestation or probate shall not be held notice to subsequent bona fide purchasers or younger liens. Civil Code, § 3262. This statute makes it the duty of a mortgagee to see that his mortgage is duly attested for record; and if he fails in this regard, then his mortgage is postponed to younger liens. The question is not an open one; for it has been distinctly decided that "a judgment junior in date to a mortgage illegally recorded for want of probate, but founded on a debt antecedent to the date of the mortgage, has priority of lien to the mortgage." *Andrews* v. *Mathews, 59 Ga.* 466; *Richards* v. *Myers, 63 Ga.* 762; *New England &c. Co.* v. *Ober, 84 Ga.* 294; *Cottrell* v. *Merchants & Mechanics Bank, 89 Ga.* 508 (15 S. E. 944). As the same rules govern the priority of conditional bills of sale, as affected by registry, which govern the registry of mortgages, it follows that if the conditional bill of sale be illegally recorded, the property therein described is subject to a younger attachment lien founded on an antecedent debt.

*Judgment affirmed. All the Justices concur.*