## CENTRAL UNION TRUST CO. v. APPALACHIAN CORPORATION (WEST, Intervener).

(District Court, N. D. Georgia. July 10, 1924.)

1. **Corporations** ☞426(10)—**Using proceeds of bond issue held to ratify execution of mortgage securing it.**

Corporation, by disposing of bond issue and enjoying proceeds, ratified execution of mortgage securing bonds, and could not thereafter claim that execution was invalid, in that mortgage was signed in secretary's presence by assistant secretary, who was authorized to execute mortgage only if secretary was absent.

2. **Bankruptcy** ☞151, 185—**Trustee's lien is equal to judgment; trustee may challenge mortgage.**

Trustee's lien, though no better than judgment, is equivalent to one, and is intended to give each general creditor same rights as though all on date of bankruptcy had obtained general judgments, and trustee in bankruptcy may challenge mortgage with his lien.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Creditors' suit** ☞36(1)—**Mortgages** ☞497(1)—**Receivers** ☞77(3)—**Mortgage foreclosure, though aided by receivership, no impediment to suits by other creditors.**

Seizure under creditors' bill fixes equitable lien, and after general receivership for insolvent subsequent judgments will not be recognized as liens; but mortgage foreclosure, though aided by receivership, is no impediment to suits by other creditors.

4. **Mortgages** ☞497(1), 559(9)—**Effect of mortgage foreclosure and decree stated; deficiency judgment creates lien.**

Foreclosure is not brought to create lien, but to enforce existing one, and decree creates no general judgment lien, and affects no property except that mortgaged, and that only by limiting time for redemption and authorizing its sale, if not redeemed; but deficiency judgment does create lien.

5. **Mortgages** ☞176—**Judgment prevails over unrecorded Georgia mortgage, though foreclosure has been decreed and property seized for sale.**

Under Park's Ann. Code Ga. § 3260, judgment prevails against unrecorded mortgage, though mortgage was being foreclosed and judgment creditor had actual notice of it when his judgment was obtained; and this is true, though foreclosure had been decreed and mortgaged property was seized for sale when judgment was rendered.

6. **Liens** ☞12—**Under Georgia law, liens arising from operation of law take priority, irrespective of notice.**

Under Georgia law, liens arising from operation of law take priority, irrespective of notice of any kind.

7. **Records** ☞19—**Record on insufficient attestation is no record.**

Under Park's Ann. Code Ga. § 3262, a record on insufficient attestation or probate is equal to no record.

8. **Acknowledgment** ☞20(3)—**Official attestation of mortgage by notary, who is officer of mortgagor corporation, held not so against public policy as to make it void.**

Official attestation to acknowledgment in mortgage by notary who is stockholder and director of corporate mortgagor under Georgia law is nonjudicial, and being against his interest as stockholder, is not so condemned by public policy as to be void.

9. **Mortgages** ☞64—**Completing attestation of previously executed mortgage in presence of mortgagors and witnesses held re-execution.**

Under Park's Ann. Code Ga. § 3259, where mortgage was attested by one witness only, and thereafter, when all executing parties and both witnesses were present, attestation was completed, paper recorded by mortgagor, and redelivered to mortgagee, there was in legal effect a re-execution.

10. **Mortgages** ☞55—**Mortgagee need not be present at execution and attestation.**

Grantee or mortgagee need not be present at execution and attestation of instrument.

11. **Mortgages** ☞74—**Record of mortgage presumes delivery.**

Record of mortgage presumes delivery.

In Equity. Action by the Central Union Trust Company against the Appalachian Corporation, in which H. S. West, trustee in bankruptcy of the Appalachian Corporation, intervenes. Prayers of trustee's intervention denied.

Horace M. Holden, of Athens, Ga., and Anderson & Rountree, of Atlanta, Ga., for trustee in bankruptcy.

Watkins & Asbill, of Atlanta, Ga., for receiver.

Alston, Alston, Foster & Moise, of Atlanta, Ga., for Central Union Trust Co.

Sanders McDaniel, of Atlanta, Ga., for bondholders' committee.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SIBLEY, District Judge. As trustee in a mortgage securing $1,000-000 of bonds of Appalachian Corporation, Central Union Trust Company filed its bill to foreclose and secured the appointment of receivers for the mortgaged property on July 1, 1922. On August 4, 1922, by consent, a decree of foreclosure was entered. Several efforts to make a sale followed, the receivers meanwhile operating the very extensive apple orchards involved, and having to issue and sell about $30,000 of receivers' certificates for their preservation. In April, 1924, the Appalachian Corporation went into voluntary bankruptcy, and the trustee, H. S. West, intervenes and moves the court to arrest a sale now pending for confirmation and to turn the property over to him for administration; he claiming the mortgage to be invalid as against the corporation and inferior to his lien as trustee in bankruptcy. Upon the evidence taken on the intervention I find the essential facts to be as follows:

The mortgage was prepared in quadruplicate in New York, together with the corporate resolution authorizing it, by an attorney acting for both the mortgagor and mortgagee. The resolution was adopted at the corporation's office in Georgia on April 21, 1917, and on the same day the four original mortgages were executed by Louis B. Magid, as president, and Stanley H. Watson, as assistant secretary; the corporate seal being affixed. On that day G. R. Attride, who was the corporation's secretary, a stockholder, and a director, attested the execution as a notary public, and also took acknowledgments of the execution and made notarial certificates thereof. The original mortgages were then sent to the trust company and by it executed in New York on April 27th. Two of these were returned to the Appalachian Corporation for record in two counties in Georgia, when by some one it was discovered that an additional attesting witness was necessary, and, Magid, Watson, and Attride all being present, one Turnipseed was requested to also attest, and he signed his name under the word "Witness" below the signatures for the corporation of Magid and Watson and across the corporate seal. Attride did not change the date of his previous attestation and acknowledgment certificates. Magid then had these two originals, so witnessed and proved, recorded about May 4, 1917, redelivered them to the trust company, received in due course the bonds, sold them, and applied the money to the use of the Appalachian Corporation.

[1] 1. The resolution authorizing the execution of the mortgage directs that it be done by the president and secretary, or *in his absence,* by the assistant secretary. It is said that the execution by the president, Magid, and assistant secretary, Watson, was invalid, since the secretary, Attride, was present, as shown by his attestation certificate. The objection goes merely to Watson's authority to act for the corporation. If it would have been good in limine, it is not now. The corporation could not disavow the act of its officers, after using it to get and dispose of the bond issue, and after enjoying the proceeds thereof. There has been thereby a complete ratification, not to mention the answer filed in this case, admitting the execution of the mortgage and the solemn decree thereon. The mortgage is not vulnerable at this point.

[2] 2. For the bondholders it is urged that, inasmuch as no general creditor has obtained any judgment or lien, the trustee in bankruptcy has no standing to attack the mortgage; reliance being had on Martin v. Commercial Nat. Bank, 245 U. S. 513, 38 Sup. Ct. 176, 62 L. Ed. 441; and In re Smith-Flynn Commission Co. (C. C. A.) 292 Fed. 465. Neither case is in point. In the former the mortgage was duly recorded before the trustee's lien arose. There was therefore no claim that the trustee's lien was superior, but that the mortgage was invalid because recorded after insolvency and within four months of the bankruptcy. The holding was that the mortgage, having been given for a present consideration and not held off record for a fraudulent purpose, was under the Georgia statute not postponed to any save liens accruing before its actual record, and since the trustee's lien arose subsequently to the record, and since he represented no creditor having a lien arising before the record, he represented nothing which could be superior to the mortgage. In the latter case there was asserted an equity of mutual mistake, whereby a surrendered pledge should be restored. The holding was that the trustee in bankruptcy was as much bound to make the restoration as the bankrupt would have been. The trustee's lien is no more than that of a judgment and a judgment creditor is not a bona fide purchaser for value, to be protected against an equity. Burke v. Anderson, 40 Ga. 535; Phillips v. Roquemore, 96 Ga. 719, 23 S. E. 855. But the trustee's lien, while no better than a judgment, is the equivalent of one, and is intended to give to each general creditor, through the trustee, the same rights as though they all, on the date of bankruptcy, had obtained the general judgments which the bankruptcy prevents their getting. The trustee may challenge this mortgage with his lien.

[3, 4] 3. But it is said that the decree of foreclosure is itself a judgment lien older than the trustee's lien, and that the filing of the foreclosure proceedings, and especially the seizure of the property by the receivers, is the equivalent of record of the mortgage, and fixes an equitable lien independent of the mortgage lien. It is true that a seizure under a creditors' bill fixes an equitable lien, and that, after a general receivership for an insolvent, judgments later obtained will not be recognized as liens. But a mortgage foreclosure, though aided by a receivership of the mortgaged property, is no impediment to suits by other creditors. It is not brought to raise a lien, but to enforce one already in existence. The decree of foreclosure creates no general judgment lien. It affects no property save that mortgaged, and affects it only by limiting the time for redemption and authorizing its sale if not redeemed. Hays v. Reynolds, 53 Ga. 329. A deficiency judgment, however, if taken, does create a judgment lien. 27 Cyc. 1670. Neither the prayers of the bill nor the decree in this case show anything beyond the usual mortgage foreclosure, to be followed by a deficiency decree, if there should be a deficiency. The trust company has no judgment lien. It must stand on its mortgage.

[5] 4. As against an unrecorded Georgia mortgage, a judgment prevails, though the mortgage was being foreclosed, and the judgment creditor had actual notice of it when his judgment was obtained. Cam-

bridge Tile Co. v. Scaife, 137 Ga. 281, 73 S. E. 492, and cases cited. And the same is true, though foreclosure had been decreed and the mortgaged property seized for sale when the judgment was rendered; Richards v. Myers, 63 Ga. 763. This results from the provisions of the Georgia statute touching these liens. Under a previous statute, quoted in Hardaway v. Semmes, 24 Ga. 305, a foreclosure, pending or completed, might have saved the mortgage, but the present statute, Park's Code, § 3260, is:

"Mortgages not recorded within the time required remain valid as against the mortgagor, but are postponed to all other liens created or obtained, or purchases made prior to the actual record of the mortgage. If, however, the younger lien is created by contract, and the party receiving it has notice of the prior unrecorded mortgage, or the purchaser has the like notice, then the lien of the older mortgage shall be held good against them."

[6, 7] It is settled that liens arising, not from contract, but by operation of law, take priority irrespective of notice of any kind. Cambridge Tile Co. v. Scaife, supra; Cottrell v. Bank, 89 Ga. 517, 15 S. E. 944. It is also settled that a record on an insufficient attestation or probate is equal to no record. Park's Code, § 3262; Donalson v. Thomason, 137 Ga. 848, 74 S. E. 762; New England Mortgage Co. v. Ober, 84 Ga. 294, 10 S. E. 625; Southern Iron Co. v. Voyles, 138 Ga. 258, 75 S. E. 248, 41 L. R. A. (N. S.) 375, Ann. Cas. 1913D, 369. The decision of this case must turn on the validity of the attestation and record of the mortgage.

[8] 5. A mortgage in Georgia "must be executed in the presence of, and attested by, or proved before, a notary public or justice of any court in this state, or a clerk of the superior court (and in case of real property by one other witness), and recorded." Park's Code, § 3257. This mortgage was promptly recorded, and on its face seems to be duly attested. In the case of Southern Iron Co. v. Voyles, 138 Ga. at page 261, 75 S. E. 248, 41 L. R. A. (N. S.) 375, Ann. Cas. 1913D, 369, it is said that the Georgia court has never adjudged, and did not then adjudge, the effect of the record of a defectively acknowledged instrument, where the defect was hidden, in determining the rights of third parties between themselves, but that, where the contest was between a party to the defective instrument and an innocent third person, proof dehors the record had been allowed in three cited cases, and to these must be added the Voyles Case.

In the present case the mortgagee, perhaps neglectfully, had no part in the attestation, and the bondholders were not such at the time, but subsequently purchased bonds on the faith of the record. The face of the record might well be held to be conclusive here, if it should ever be. But the same result can be reached otherwise. The hidden defects are (a) that the notary, who attested officially and took the acknowledgment, was disqualified to act; (b) that no second witness attested the execution. The notary, Attride, was a stockholder in the mortgagor corporation. Whether his shares were a gift or paid for by service, whether they were ever delivered to him or not, he acted as a stockholder and could have asserted his rights as such. But his official act in attesting and taking acknowledgments of his company's mortgage was against

his and its interest, for it tended to establish a lien on its property. Such official act is, in Georgia, nonjudicial. Wardlaw v. Mayer, 77 Ga. 620, 622; 1 Cyc. 557. And disqualification is rested on the impolicy of allowing an officer to certify a matter in his own favor. The Georgia cases are very liberal in upholding official attestations by one related to the mortgagee, Welsh v. Lewis, 71 Ga. 387; by the agent of both parties in the transaction, Wardlaw v. Mayer, 77 Ga. 620, or even by the attorney of the mortgagee who prepared the mortgage and accepted the delivery, Jones v. Howard, 99 Ga. 451, 27 S. E. 765, 59 Am. St. Rep. 231. Those disqualifying a stockholder are Betts-Evans Co. v. Bass, 2 Ga. App. 718, 59 S. E. 8, and Southern Iron Co. v. Voyles, 138 Ga. 258, 75 S. E. 248, 41 L. R. A. (N. S.) 375, Ann. Cas. 1913D, 369. In both of these the stockholder's interest was with the mortgagee; his company was receiving the benefit of the mortgage. In the former opinion such expressions occur as this:

"To allow an officer, in private or public, to discharge a function in his own interest, by which special rights accrue to him, is obnoxious to public policy and liable to be productive of fraud. * * * Certainly one authorized * * * to attest writings, so as to entitle them to record would be disqualified from attesting an instrument drawn in his own interest, either to secure a debt or to convey title to himself, * * * and though in case of a partnership or of a stockholder in a corporation the degree of pecuniary interest would be less, the principle would be unchanged."

So in the Voyles Case it is said:

"The rule that interest will disqualify does not depend upon any statutory prohibition; it arises out of the fact that it is against public policy to permit a grantee or mortgagee, or other person beneficially interested in the transaction, to take an acknowledgement of an instrument in which he is named as a party or has a beneficial interest."

Despite broad language used at times, the court in both cases had evidently in mind the party to whom the benefit of the paper moves as being the source of the disqualification. At common law the interested witness was not excluded from testifying *against* his interest. Brown v. Burke, 22 Ga. 574; 40 Cyc. 2253. Numerous cases bearing upon the point at issue are collected in the note to Cooper v. Hamilton, 56 Am. St. Rep. 798. They seem, almost without exception, to conform to the distinction here suggested. And see Greve v. Echo Oil Co., 8 Cal. App. 275, 96 Pac. 904. The stockholder, when not an officer through whom the corporation is acting, is, of course, not himself a party to the transaction. It is concluded that an official certificate by a stockholder *against* his corporation, while not to be encouraged, is not so condemned by public policy as to be void.

[9] 6. The other witness, since the mortgage covered realty, was indispensable to its proper record. The contention is that he did not attest the original execution, did not see the mortgage signed, sealed, and delivered, and that what happened afterwards could not be more than an acknowledgment of the previous execution, and that an acknowledgment can only be taken by an officer, and that no acknowledgment, even before an officer, is provided as to mortgages, save in Code, § 3264, touching those executed outside of the state. Usually, where the statute requires attesting witnesses, a proper acknowledgment will

operate as a substitute; 1 Cyc. 541; Devlin on Deeds, 3d Ed.; Reeves, Real Property, § 1114. As to Georgia deeds of conveyance, official attestation and acknowledgment are both provided for, and either is expressly allowed. Park's Code, § 4202. The difference between them is pointed out in White v. Magarahan, 87 Ga. 217, 13 S. E. 509. In a case relating to a mortgage, the court, in Ballard v. Orr, 105 Ga. 191, 194, 31 S. E. 554, quoted section 4202 as applicable, and said that in Georgia attestation and acknowledgment were interchangeable. This, though obiter, expresses the common practice in this state. Mortgages are frequently signed, then carried first before one witness or another and acknowledged; the witnesses, whether official or nonofficial, subscribing an attestation clause.

I have never heard the practice challenged, notwithstanding the statements of White v. Magarahan, which are also obiter. In that case the statute really involved was Code, § 3002, requiring voluntary settlements on a wife to be recorded in three months on pain of invalidity as against bona fide creditors. The settlement was held off the record until near the end of the three months, during which bona fide credits were extended to the husband. When the deed was offered for record there was no official witness; so it was acknowledged before the clerk, who signed the attestation clause. What was really held was that the record on that new attestation would not *relate back three months.* It was distinctly not held invalid for the future, though the inaccuracy of signing the attestation clause, instead of an acknowledgment, was pointed out. The solution of the matter is this:

[10, 11] Code, § 3259, in its last sentence, distinctly recognizes that mortgages may be *re-executed* and recorded. When the mortgagor takes his mortgage before a witness and admits it as his act, to obtain a proper attestation for record, he re-executes it in effect, and fits it thereby for record. Saranac Mach. Co. v. Heyward (C. C. A.) 293 Fed. 499. Certainly when all the executing parties and both required witnesses are assembled, as was done here, attestation completed, the paper recorded by the mortgagor and redelivered to the mortgagee, the transaction may properly be termed a re-execution. That the grantee or mortgagee need not be present at the execution and attestation of an instrument is well settled. The intent that it shall, by its formal execution, have present operation, is sufficient, though custody be temporarily retained by the maker. Rushin v. Shields, 11 Ga. 636, 56 Am. Dec. 436; Wellborn v. Weaver, 17 Ga. 267, 63 Am. Dec. 235; O'Neal v. Brown, 67 Ga. 707. Record presumes delivery. Mays v. Fletcher, 137 Ga. 27, 72 S. E. 408.

It is therefore held that this mortgage was well executed and attested and recorded, and is valid as against the lien of the trustee in bankruptcy. No reason appears why the mortgage foreclosure should not proceed. The prayers of the trustee's intervention are denied.