In re Denise CODRINGTON, Debtor.

Neil C. Gordon, Trustee, Plaintiff,

v.

Wells Fargo Bank, N.A., Defendant.

Bankruptcy No. 08–70899.
Adversary No. 08–6612.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Dec. 10, 2009.

Michael F. Holbein, Neil C. Gordon, Arnall Golden Gregory LLP, Atlanta, GA, for Plaintiff.

Edward D. Burch, Smith, Gambrell & Russell, LLP, Elizabeth A. George, John D. Schlotter, Aldridge Connors LLP, Atlanta, GA, for Defendant.

## ORDER DENYING MOTION OF DEFENDANT FOR SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT TO PLAINTIFF

JAMES E. MASSEY, Bankruptcy Judge.

The issue in this adversary proceeding is whether under Georgia law a filed and recorded deed to secure debt that lacks the signature of an unofficial witness on the deed's signature page provides constructive notice of the grantee's lien to a bona fide purchaser. If it does not, as the Plaintiff contends, the lien asserted can be set aside under section 544 of the Bankruptcy Code. The facts are not disputed.

In 2006, Denise Codrington, who is the Debtor in this case, and Alvina Codrington executed a security deed to Wells Fargo Bank to secure a loan. The deed, dated September 21, 2006, conveyed real property described as Lot 1, Block A, Kensington Heights as per Plat Book 269, Pages 28–367, Fulton County, Georgia records (the "Property"). Page 8 of the security deed is the signature page of the deed. At the top of that page is the following language: "BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it." The signatures of the grantors appear on lines labeled "Borrower." Below the signatures of the grantors is the signature and seal of a notary public. A signature line, labeled "Unofficial Witness," is blank. Other than the notary's signature and seal, there is no language or other signal to indicate that anyone saw the grantors sign the deed. The deed was recorded in the real estate records of Fulton County, Georgia on October 13, 2006.

The security deed as a whole consists of 14 pages. The first nine pages constitute the security instrument conveying title to Defendant to secure the debt, including an exhibit ("Exhibit A") containing the legal description of the property. Paragraph 23 on page 7 of the security instrument provides:

> If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

Following Exhibit A is a 3–page adjustable rate rider ("ARM"), a single-page planned unit development rider, and on the last page a waiver of borrower's rights form, a closing attorney's affidavit, and a foreclosure closing disclosure.

The waiver of borrower's rights form contains five numbered terms, none of which conveys the Property. The fifth term provides that "Grantor expressly ... (5) agrees that the provisions hereof are incorporated into and made a part of the security deed." Beside the signatures of the grantors are the signatures of an unofficial witness and the signature and seal of the same notary that attested page 8 of the security instrument.

This notary was also the closing attorney, and below the waiver form is a separate instrument entitled "closing attorney's affidavit." The affidavit is signed by the closing attorney as affiant and notarized by a different notary. Finally, below the affidavit is a "foreclosure closing disclosure" executed by the grantors. The riders and the waiver of rights page were filed and recorded contemporaneously with the security instrument.

On June 9, 2008, Denise Codrington filed this Chapter 7 case under case number 08–70899. Neil C. Gordon was appointed as the Chapter 7 Trustee.

## I.

■ Mr. Gordon, as Trustee, brings this adversary proceeding against Defendant Wells Fargo Bank, N.A. pursuant to 11 U.S.C. § 544(a)(3), seeking to avoid its interest in the Property. Section 544(a)(3) of the Bankruptcy Code grants to a bankruptcy trustee so-called "strong-arm" powers that may enable the trustee to set aside or avoid transfers of the debtor's real property. That section provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—...

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). State law determines the extent of the powers of a bona fide purchaser of real property. *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *In re Hedrick*, 524 F.3d 1175, 1182 (11th Cir. 2008).

Plaintiff contends that under Georgia law, a deed to secure debt not attested by an unofficial witness is not properly recordable and therefore cannot provide constructive notice of its existence to a subsequent bona fide purchaser. He further contends that because the security deed at issue lacks the signature of an unofficial witness, he is entitled to a judgment avoiding the transfer of the Property to Defendant pursuant to section 544(a)(3) of the Bankruptcy Code and preserving the avoided lien for the benefit of the estate pursuant to section 551 of the Bankruptcy Code.

Defendant contends that a 1995 amendment to O.C.G.A. § 44–14–33 changed the law to enable an unattested security deed to provide constructive notice of its existence to a subsequent bona fide purchaser. In the alternative, Defendant argues that Plaintiff is constructively aware of the security deed regardless of its record status, because the waiver of borrower's rights is

itself properly attested pursuant to O.C.G.A. § 44–14–33 and is therefore in recordable form. According to Defendant, the waiver of borrower's rights puts the world on notice of its contents, which would necessarily compel further inquiry that would, in turn, result in the discovery of the security deed.

Defendant moves for summary judgment. Because the material facts are not in dispute, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### II. A.

In Georgia, before any deed, mortgage, or other recordable instrument may be recorded, "it *must be* attested or acknowledged as provided by law." O.C.G.A. § 44–2–14(a) (emphasis added). Despite these requirements, clerks file unattested or otherwise improperly attested deeds, though presumably not very often.

There are two types of testimonial defects. First, a deed may have a latent defect, meaning that the defect is not apparent on the face of the deed. One example is a deed signed by a person who, otherwise intending to serve as a witness, did not actually observe the grantor execute or acknowledge the deed. Notwithstanding a lack of clarity on this point in a few cases decided prior to 1995, the Georgia Supreme Court held in *Leeds Building Products, Inc. v. Sears Mortgage Corp.*, 267 Ga. 300, 477 S.E.2d 565 (1996) that a security deed with a latent defect provided

constructive notice of its existence to a bona fide purchaser.

Second, a deed may have a patent defect, meaning that the defect is obvious and easily detectable. An example is a deed missing the signature of an unofficial witness. Georgia law has long provided that a patently defective deed does not provide constructive notice to a bona fide purchaser. *See, e.g., Donalson v. Thomason*, 137 Ga. 848, 74 S.E. 762 (1912). There is no dispute between the parties that this was the law prior to 1995.

Defendant argues that an amendment to O.C.G.A. § 44–14–33 in 1995 changed the law to provide that a recorded deed with a patent defect provides constructive notice to a subsequent bona fide purchaser. The amended statute (Ga. Laws 1995, p. 1076) reads as follows:

> In order to admit a mortgage to record, it must be attested by or acknowledged before an officer as prescribed for the attestation or acknowledgment of deeds of bargain and sale; and, in the case of real property, a mortgage must also be attested or acknowledged by one additional witness. In the absence of fraud, if a mortgage is duly filed, recorded, and indexed on the appropriate county land records, such recordation shall be deemed constructive notice to subsequent bona fide purchasers.

O.C.G.A. § 44–14–33. The amendment added the second sentence. O.C.G.A. § 44–14–61 provides that "[i]n order to admit deeds to secure debt or bills of sale to record, they shall be attested or proved in the manner prescribed by law for mortgages."[1]

---

1. This section is limited to manner of attestation; it does not incorporate § 44–14–33 in its entirety and does not otherwise address the question of when a security deed provides constructive notice. A security deed, which conveys title to real property, is not a type of mortgage, which only creates a lien. O.C.G.A. § 44–14–60. The Court has not found any other statute that would apply the second sentence of § 44–14–33 to security deeds. Because the parties did not raise this issue, however, the Court will address the

Defendant's argument that the amendment to § 44–14–33 changed Georgia law with respect to patently defective deeds was raised in *Gordon v. Terrace Mortgage Co. (In re Kim)*, 571 F.3d 1342, 1345 n. 4 (11th Cir.2009), but the Court of Appeals resolved the appeal without addressing the issue. Without question, the amendment clarified the pre-amendment law that a latently defective deed provides constructive notice, as the Supreme Court held in the *Leeds* case.

### B.

Defendant argues that its construction of § 44–14–33, as amended, is correct for the following reasons: (1) its meaning is plain; (2) the amendment does not distinguish between latently defective deeds and patently defective deeds; (3) the amendment is presumed to have changed the law because (a) an amendment to a statute raises a presumption that the Legislature intended to change the law and (b) the preamble to the amendment recites that conflicting laws are repealed; and (4) it reflects sound policy.

■ Defendant contends that its construction of § 44–14–33 is its plain meaning: "Under the plain language of the new statute, a deed that is filed, recorded and indexed 'shall be deemed constructive notice.'" Brief in Support of Defendant's Motion for Summary Judgment, Doc. 5, Part 2, p. 6. In making this argument, Defendant ignores the key words in the amendment defining its reach. The 1995 amendment states that *"such* recordation shall be deemed constructive notice to subsequent bona fide purchasers," not that any recordation provides constructive notice. (Emphasis added.) The words "such recordation" relate back to the words *"duly* filed,

recorded, and indexed." (Emphasis added.) Only a "duly" recorded mortgage provides such notice. Ironically, when Defendant confronts the word "duly," it reverses course, arguing that "the phrase [duly filed, recorded, and indexed] is ambiguous." Defendant's Brief, Doc. 5, Part 2, p. 12.

■ Defendant's reading overlooks the rule of statutory construction that "courts should construe a statute to give 'sensible and intelligent effect' to all of its provisions and should refrain, whenever possible, from construing the statute in a way that renders any part of it meaningless." *Sikes v. State*, 268 Ga. 19, 21, 485 S.E.2d 206, 208 (1997). If the amendment to § 44–14–33 has the same meaning whether or not the word "duly" is present, the word "duly" would be rendered meaningless. Defendant's construction reads the word "duly" out of the statute.

"Generally, 'duly done' means done according to law. *See, Ingram v. Smith*, 62 Ga.App. 335(1), 7 S.E.2d 922; *Tyler v. Jones County Bank*, 78 Ga.App. 741, 52 S.E.2d 547; Black, Law Dictionary, 591." *Nussbaum v. Shaffer*, 105 Ga.App. 430, 431, 124 S.E.2d 658, 660 (Ga.App.1962). In *Bank of Cumming v. Goolsby*, 34 Ga. App. 217, 129 S.E. 8 (Ga.App.1925), the Georgia Court of Appeals explained the issue in that case and its resolution as follows:

> On the instant trial of a money rule, involving the relative priorities of a mortgage on realty, recorded but having only one witness, and of a subsequent **duly** recorded mortgage, where both parties agreed in open court that the one issue in the case which should be submitted to the jury was whether or

arguments of the parties as if the second sentence of § 44–14–33 applied to security deeds.

not the holder of the subsequent mortgage had "actual notice" of the earlier outstanding mortgage "at the time it took its mortgage," and where such question was thus submitted, the court did not err, in the absence of a proper request, in failing to define the exact legal meaning of the term "actual notice" or knowledge, or to charge upon constructive notice by stating the legal effect of the imperfect record of a mortgage on realty having only one subscribing witness.

*Id.* (Emphasis added.) The trial court had submitted the question of actual notice to the jury because the earlier deed, having only one witness, did not provide constructive notice of its existence. In distinguishing "a mortgage on realty, recorded but having only one witness" and "a subsequent duly recorded mortgage," the Court of Appeals necessarily held that a "duly" recorded mortgage is one that is attested by the requisite number of witnesses.

A "duly" filed and recorded mortgage is obviously one that a clerk is authorized by law to record. The second sentence of § 44–14–33 must be read in light of the first sentence, which instructs clerks to "admit" a mortgage to record only if it is attested or acknowledged by an authorized officer and one additional witness. It is the appearance of the appropriate signatures on the deed that permits the clerk to record an attested deed. An unattested or partially attested deed, even if recorded, cannot provide constructive notice because it cannot be "duly filed, recorded and indexed." *Farinash v. First Union (In re Blackmon),* 283 B.R. 910 (Bankr.E.D.Tenn.2002).

### C.

Defendant observes that § 44–14–33 does not expressly distinguish between latently defective deeds and patently defective deeds, leading it to conclude that the amendment must cover both types of defective deeds. Defendant is mistaken because it ignores what the statute expressly distinguishes: deeds that are duly recorded and those that are not. In arguing that the amendment makes fraud the only exception to the existence of constructive notice, Defendant fails to notice that the fraud exception applies to those deeds that were duly filed and recorded. Deeds not duly recorded—that clerks are not authorized to record—provide no constructive notice, whether or not they are fraudulent.

Defendant relies on *Southern Iron and Equip. Co. v. Voyles,* 138 Ga. 258, 75 S.E. 248 (1912) for the proposition that prior to the 1995 amendment of § 44–14–33 a latently defective deed did not provide constructive notice. Defendant's Brief, Doc. No. 5, pp. 11–12. In *Voyles,* the narrow issue was "whether a conditional bill of sale, attested by a stockholder of the claimant corporation, who is a notary public and recorded within the statutory period, shall prevail over the lien of a subsequent attachment on the property." *Voyles,* 138 Ga. at 259, 75 S.E. 248. The Supreme Court held that the bill of sale did not provide constructive notice because the notary was disqualified from being a witness, even though the attestation on its face was not defective. That case did not address the issue of whether a latent defect in a security deed would bar constructive notice. In the *Leeds* case, the Supreme Court stated: "This Court has never squarely considered the effect of a recorded instrument which, although defectively acknowledged, shows no such defect on its face. However, our appellate courts have by implication determined that such a deed constitutes constructive notice." *Leeds Bldg. Products, Inc. v.*

*Sears Mortg. Corp.*, 267 Ga. at 301, 477 S.E.2d 565 (citations omitted).

### D.

 In its effort to show that the law changed with respect to patently defective deeds, Defendant points to the presumption in aid of construction of a statute that when the Legislature amends a statute, it intends "to make some change in the existing law." *Eg., Balest v. Simmons*, 201 Ga.App. 605, 607, 411 S.E.2d 576 (Ga. App.1991). The presumption is inapplicable here because the meaning of the statute is not in doubt as shown above. "Where the language of the statute is clear, unambiguous, and does not lead to any absurd or impractical consequences, this Court is prohibited from construing the statute differently than the terms of the statute." *Aldrich v. City of Lumber City*, 273 Ga. 461, 464, 542 S.E.2d 102, 105 (2001).

 Further, this aide to construction gets no traction where, as here, the amendment makes no direct or indirect reference to any other law. *Cf. Board of Assessors of Jefferson County v. McCoy Grain Exchange, Inc.*, 234 Ga.App. 98, 100, 505 S.E.2d 832, 834 (Ga.App.1998) (preamble of amendment stated that it was to change a particular law). Arguably a valid starting point for further analysis of a statute, the presumption finds no support in the text of the sentence added to § 44–14–33. Where an amended statute is not necessarily inconsistent with its previous language, it is not clearly evident that the Legislature intended to change the law. *In re J.W.K.*, 276 Ga. 314, 316, 578 S.E.2d 396, 398 (2003); *Aldrich v. City of Lumber City, supra; Cf. Board of Assessors of Jefferson County v. McCoy Grain Exchange, Inc.*, 234 Ga.App. 98, 100, 505 S.E.2d 832, 834 (Ga.App.1998) (noting that notwithstanding a presumption that the legislature intended to change the law, an amendment to a statute might merely clarify the law as it already existed).

It is also possible that the Legislature intended to address an apparent uncertainty regarding application of the law of attestation by the amendment to § 44–14–33. In *Sears Mortg. Corp. v. Leeds Bldg. Products, Inc.*, 219 Ga.App. 349, 350, 464 S.E.2d 907, 908–909 (1995), *rev'd sub nom. Leeds Building Products, Inc. v. Sears Mortgage Corp., et al.*, 267 Ga. 300, 477 S.E.2d 565 (1996), a builder, Peach Communities, Inc., purchased construction materials on credit from Leeds Building Products, Inc. To secure its obligation to pay for the materials, Peach gave Leeds security deeds on each of its properties. Although signed, these security deeds were not properly attested because the unofficial witness did not actually see Peach's representative sign them. The plaintiffs in the case purchased or financed purchases of the properties as to which Peach had previously given security deeds to Leeds. After Peach filed bankruptcy, Leeds declared defaults and sought to foreclose on the various properties. The plaintiffs sued to stop the foreclosures. The trial court found that the deeds provided constructive notice to plaintiffs and granted Leeds' motion for summary judgment.

The Georgia Court of Appeals reversed, stating:

> "[A] deed not properly attested or acknowledged, as required by statute, is ineligible for recording and, even if recorded, does not constitute constructive notice. [Cit.]" *Higdon v. Gates*, 238 Ga. 105, 107, 231 S.E.2d 345 (1976). If the property is subsequently purchased without actual notice of the improperly recorded security deed, the subsequent purchaser's title is superior to the improperly recorded security deed. See

OCGA § 44–2–1. *See also Donalson v. Thomason,* 137 Ga. 848(5), 74 S.E. 762 (1912).

*Sears Mortg. Corp. v. Leeds Bldg. Products, Inc.,* 219 Ga.App. at 350, 464 S.E.2d 907. The Supreme Court reversed, holding that a security deed with a latent defect provided constructive notice of its existence to a bona fide purchaser.

Of course the Legislature did not know in the first half of 1995 what the final outcome of the *Leeds* case would be: 1995 Ga. S.B. 243 was enacted on April 20, 1995, the decision of the Court of Appeals was not issued until December 1, 1995, and the Supreme Court's reversal came in 1996. It is possible, however, that the Legislature was motivated by a desire to preempt what it feared the courts might construe as existing law, particularly if it was aware of the controversy in the *Leeds* case. All this is to say is that the canon of construction invoked by Defendant—that an amendment gives rise to a presumption of legislative intent to change the law—is useful only so far as it goes, which is nowhere in this case because it does nothing to clarify what the Legislature perceived the law to be prior to the amendment.

### E.

■ The preamble of the Act that added the second sentence to § 44–14–33 provides that conflicting laws are repealed, and section 2 of the Act states "[a]ll laws and parts of laws in conflict with this Act are repealed." (Ga. Laws 1995, p. 1076). Defendant asserts that the stated purpose to repeal conflicting laws supports the conclusion that the amendment "changed the old rule." Defendant's Brief, Document 5, Part 2, p. 7.

This argument is also without merit. Conflicting laws are not identified and could include case law (for example, those cases overruled by *Leeds* ) as well as statutes. Most acts passed by the Georgia Legislature in 1995 contain identical language concerning repeal of conflicting laws. *See* Ga. Laws 1995. Hence, it is not possible to say with any degree of certainty that the Legislature had any specific law in mind when it passed the amendment. The meaning of § 44–14–33 obviously cannot be derived by guessing which laws might have been repealed and then working backward. Therefore, which law, if any, was repealed, can only be identified by first determining a reasonable construction of § 44–14–33 and then determining whether a particular law is in conflict with that construction. The mere fact that an act contains language generally repealing inconsistent laws does not mean that an inconsistent statute exists. *See, e.g., National Bank of Georgia v. Morris–Weathers Co.,* 248 Ga. 798, 799, 286 S.E.2d 17, 18 (1982) ("While it is true that § 110–515 as amended provides that all laws or parts of laws in conflict are repealed, Ga.L.1966, p. 142, we find no conflict which requires a repeal.")

■ "Repeals by implication are not favored and result only where the two acts cannot stand together under any reasonable construction. *Eley v. Greene County Bd. of Comm'rs,* 258 Ga. 562, 372 S.E.2d 231 (1988)." *Gilbert v. Richardson,* 264 Ga. 744, 749 n. 6, 452 S.E.2d 476 (1994). It is reasonable to construe the amendment to § 44–14–33 as applying only to mortgages that clerks are permitted lawfully to admit to record even if later shown to be latently defective, and not to mortgages lacking an unofficial witness, which the first sentence of the section forbids clerks to file. Therefore, repeal of other laws may not be implied.

■ Defendant's interpretation of the 1995 amendment conflicts with O.C.G.A. § 44–14–39, which provides:

A mortgage which is recorded in an improper office or *without due attestation* or probate or which is so defectively recorded as not to give notice to a prudent inquirer shall not be held to be notice to subsequent bona fide purchasers. A mere formal mistake in the record shall not vitiate it.

(Emphasis added.) Section 44–14–39 flatly contradicts Defendant's interpretation of § 44–14–33. O.C.G.A. § 44–2–14(a)–(c) is also inconsistent with Defendant's interpretation; subsections (b) and (c) of § 44–2–14 were added to the statute in 1994, only one year before the amendment to § 44–14–33.[2] Because these sections have not been repealed, it is clear that an unattested mortgage cannot provide constructive notice to a bona fide purchaser.

### F.

Defendant contends that its construction of § 44–14–33 would prevent fraud in the situation in which a purchaser knew about a defective deed but feigned lack of knowledge. It has made no showing, however, that the risk of such conduct is anything more than extremely remote. A more candid argument would have been that the Legislature intended to protect lenders (and in reality negligent lawyers and title insurers who rely on them) at the expense of a system of recordation designed to inspire confidence in the real estate market.

For reasons of policy, it is unlikely that the Legislature intended to change the consequences of filing of an unattested or partially attested deed. Attestation serves to enhance the reliability of a deed—to increase the odds that the grantor in fact

executed the deed. It creates a presumption of genuineness, *Guthrie v. Gaskins,* 171 Ga. 303, 306, 155 S.E. 185 (1930), for the purpose of inducing the public to act on that presumption because "[t]he object of the execution of a deed before two witnesses, one of whom must be an officer authorized to attest deeds, is to entitle it to be recorded." *Plowden v. Plowden,* 52 Ga.App. 741, 749, 184 S.E. 343 (Ga.App. 1935). A necessary corollary is that "[t]he law for recordation is for the purpose of giving constructive notice to all persons other than the parties to the instrument." *Gilliam v. Burgess,* 169 Ga. 705, 708, 151 S.E. 652 (1930). Constructive notice is another way of saying that duly filed, recorded, and indexed deeds and mortgages are worthy of a presumption of genuineness, which enhances predictability and thereby encourages commerce in real property. An unattested deed cannot be presumed genuine merely because a clerk erred by recording it.

The interpretation of § 44–14–33 advocated by Defendant would relieve lenders of any obligation to present properly attested security deeds. It would tell clerks that the directive to admit only attested deeds is merely a suggestion, not a duty, because there would be no penalty on anyone for presenting or accepting defective deeds. It would reward the negligence of lenders and their agents in those instances in which a county clerk's employee carelessly accepts a defective deed. It would hobble, with a single sentence (in a section that begins by commanding clerks not to accept unattested deeds), a time-tested system of recording real estate transactions at the core of which is a general and well-grounded suspicion of unattested

---

**2.** Defendant's interpretation of the 1995 amendment would conflict with § 44–2–14 because a deed with no witnesses would provide constructive notice but a deed having one witness but missing the address of the person to whom the deed is to be returned, who could be a total stranger to the transaction, would not. From a policy standpoint, this would make no sense.

deeds. In reality, Defendant's interpretation of § 44–14–33 would tend to lead to an increase in the presentation of fraudulent deeds; one reason the present requirement of attestation discourages such fraud is because it operates in tandem with the presumption that a public officer or notary public sworn to do his or her duty, one of which is to attest or witness a signature on a deed, will in fact do so. *See Mills v. Parker,* 253 Ga.App. 620, 623, 560 S.E.2d 42, 45 (Ga.App.2002) ("A notary public is under a duty to faithfully execute his or her duty under the law. See OCGA §§ 45–17–5; 45–17–20(a).")

It would shift to the subsequent bona fide purchaser and everyone else the task of determining the genuineness of the grantor's signature and therefore the cost of investigating and perhaps litigating whether or not an unattested deed was in fact signed by the grantor, when the law imposes in the first place a duty on lenders to present properly attested deeds. Although it might not be difficult to determine the truth with respect to a commercial loan if the attestation error is caught soon enough, determining the truth becomes problematical if the grantor is dead or cannot be found. These added costs could arise in every instance of an unattested or partially attested deed where the parties to a later transaction become aware of the defective deed, whether or not the deed was in some way fraudulent. By contrast, it costs nothing and requires no special expertise or effort for a closing attorney, or a lender, or a title insurance company to examine the signature page of a deed for missing signatures before it is filed.

For these reasons, the Court rejects Defendant's arguments that the 1995 amendment to § 44–44–13 altered Georgia law to permit a deed lacking an unofficial witness to provide constructive notice of its existence to a bona fide purchaser.

## III.

Defendant's remaining arguments have to do with the waiver of borrower's rights attached to and made a part of the security deed. It contends that a hypothetical purchaser would be charged with inquiry notice of the security deed based upon constructive notice of the waiver of borrower's rights that would lead inevitably to the discovery of the security deed. Defendant further contends that because the security deed incorporates by reference the waiver of borrower's rights and because the waiver was attested by both an official witness and an unofficial witness, the security deed itself was properly attested.

 Defendant's first argument rests on its assertion that the waiver "is in recordable form pursuant to O.C.G.A. § 44–14–33." Defendant's Brief, Doc. No. 5, p. 16. This proposition is not supported by § 44–14–33 because that section by its terms applies only to mortgages. The waiver is not a mortgage, security deed or any other type of "instrument" (the term of art used in Chapter 2 of Title 44 of the Georgia Code) pursuant to which title to real property or an interest therein is conveyed, encumbered or otherwise affected.

The Georgia Code provides for recording of certain types of documents affecting title, not one of which is a waiver. O.C.G.A. § 44–2–2(a)(1) (deeds, mortgages, liens of all kinds and maps or plats relating to real estate in the county); § 44–2–6 (bond for title, bond to reconvey realty, contract to sell or convey realty or any interest therein); § 44–2–8 (options to purchase land or any interest in land and assignments of such options to purchase); § 44–2–9 (leases or usufructs of land or of any interest in land and assignments of

such leases or usufructs); § 44–2–10(absolute deeds and bills of sale to personalty); § 44–2–18 through 20 (affidavits); § 44–2–25 (decrees, deeds, mortgages, or other instruments affecting the title to land); and § 44–2–30 (notice of settlement).

Defendant has not cited, and the Court has not found, any Georgia statute providing for the recording of a waiver of a borrower's rights or providing that the mere recording of a waiver provides constructive notice of its existence. As has been shown, the security deed in favor of Defendant is not properly recorded and therefore cannot provide constructive notice of its contents, one part of which is the waiver.

■■■ Sections 44–2–2 and 44–2–20 require the indexing of an instrument or affidavit dealing with title to land, thereby forming a link in a chain of title with respect to the grantors and grantees involved in transactions in real property. By signing the waiver, the borrowers waived a right to notice and hearing in the event of a non-judicial foreclosure; the waiver has nothing to do with title to the Property. Even if the waiver were an affidavit, it would not be recordable because it contains no reference to a recorded deed in the chain of title or to the current owner of the Property. *Cf.* O.C.G.A. § 44–2–20 (dealing with the recording of affidavits concerning facts or circumstances affecting title to real property). In short, Defendant has not shown that the waiver is in the chain of title. A "purchaser is not charged with constructive notice of interests or encumbrances which have been recorded outside the chain of title." *Virginia Highland Civic Assn. v. Paces Properties,* 250 Ga.App. 72, 74, 550 S.E.2d 128 (Ga.App.2001) (footnote omitted). For these reasons, the waiver, standing alone, provides no constructive notice so as to create a duty of inquiry and, as a part of the security deed, provides no constructive notice because the deed itself provides no such notice.

■■■ Defendant's second argument is that the security deed was in fact properly attested because the security deed incorporated the waiver, which was executed by attesting witnesses. This argument is also without merit.

As discussed previously, §§ 44–14–61 and 44–14–33, two witnesses must attest or acknowledge the execution of a security deed in order to admit the deed to record, and one of those witnesses must be an officer authorized pursuant to § 44–2–15 to attest recordable instruments. Taken together, these three statutes prescribe this threshold requirement for recordation of a security deed. Defendant acknowledges that the signature of the unofficial witness on the waiver form does not indicate that the witness observed the execution of the security instrument. Defendant's Brief, Document 5, Part 2, p. 20. Nevertheless, Defendant seems to propose a rather fluid understanding of what constitutes a single document for the purposes of the record statutes. Defendant observes that O.C.G.A. § 44–14–33 "makes no requirement as to where the signatures and attestations must appear in the Security Deed". It also refers to the first sentence of § 44–5–33, which instructs that "[n]o prescribed form is essential to the validity of a deed to lands or personalty." Defendant's Brief, Document 5, Part 2, p. 17. The implication of this line of thought is that because the statute which prescribes the method and effect of due attestation is silent concerning exactly *where* in the document the signatures constituting execution and attestation must appear, it does not matter where the parties and witnesses sign the document (presumably as long as they sign it somewhere).

To the contrary, the signature page (page 8 of the security instrument) is the *only* place within the fourteen-page document where a notary and an additional witness could certify to the execution of the instrument as a whole, regardless of how many riders were executed and attached. The waiver form contains no language conveying the property described in the exhibit to the deed, and execution of the waiver by the grantors does not demonstrate either the intent to transfer property or even agreement to the terms of the security instrument. *See Bell v. McDuffie,* 71 Ga. 264, (1884) ("While it is true that no prescribed form is essential to the validity of a deed to land, yet the instrument must be sufficient in itself to show that the intention of the parties was to convey the land.")

Further, the signatures of the witnesses to the waiver create a presumption that they witnessed the grantor sign the waiver, but those signatures create no presumption that the witnesses observed the grantor signing the security deed conveying the property. *See Stone v. Decatur Fed. Sav. & Loan Ass'n (In re Fleeman),* 81 B.R. 160 (Bankr.M.D.Ga.1987). Under Defendant's reasoning, a deed would be properly executed and effective even if the grantor and the witnesses did not sign the deed proper but executed only an attached waiver of borrower's rights to notice and hearing in the event of a non-judicial foreclosure. It is unlikely any Georgia court would adopt such a strained proposition.

Finally, O.C.G.A. § 44–2–18, which saved the defectively attested deed in *Gordon v. Terrace Mortgage Company (In re Kim),* 571 F.3d 1342 (11th Cir.2009), is not applicable here. The security deed in this case is missing the signature of the unofficial witness—not that of an official witness—and therefore cannot trigger the provisions of O.C.G.A. § 44–2–18. Nor could such an affidavit, signed by a notary, "testify to the execution of the deed and its attestation according to law," since the affiant (i.e., the notary) could not certify that the deed was attested, when it is undisputed that an unofficial witness failed to execute the deed showing that the witness observed the signature of the grantor. To hold otherwise would make a deed not signed by a grantor or any witness valid so long as someone signs a closing attorney affidavit that is attached to the unexecuted deed, again a proposition no Georgia court would likely accept.

For these reasons, Defendant's motion for summary judgment is DENIED. Because nothing is left to try in this proceeding, Plaintiff is entitled to judgment as a matter of law. *Pollock v. Birmingham Trust Nat. Bank,* 650 F.2d 807, 810 (5th Cir.1981). Accordingly, the Court will enter a judgment against Defendant and in favor of Plaintiff.

**IT IS ORDERED as set forth below:**